287 So.2d 316 (1973)
Terry L. BILLINGS et al., Appellants,
v.
CITY OF ORLANDO et al., Appellees.
No. 44111.
Supreme Court of Florida.
December 19, 1973.
*317 Edward J. Hanlon, Jr., and James A. Lowe, Hanlon & Lowe, Orlando, for appellants.
Arthur C. Rinsky, Van Den Berg, Gay, Burke & Dyer, Orlando, for appellees.
DEKLE, Justice:
This cause comes before us on appeal from the Circuit Court of Orange County, transferred by the Fourth District Court of Appeal pursuant to F.A.R. 2.1a(5)(c), 32 F.S.A. The Circuit Court, in dismissing the complaint in this suit, expressly affirmed the constitutional validity of Ch. 22414, Florida Special Acts of 1943[1], in the face of petitioners' constitutional attacks on that act. Accordingly, we have jurisdiction to hear this cause pursuant to Article V, § 3(b)(1), Florida Constitution, F.S.A.
The facts are as stipulated by the parties. This is a class action filed by former police officers of the City of Orlando, seeking a refund of contributions made by them to a police pension fund created by Ch. 22414, Special Acts of 1943 (hereinafter referred to as "the special act") and not previously refunded. This act provides for a mandatory contribution of 5% of each police officer's salary, which is deducted from his monthly check and deposited to the credit of the pension fund; if a city police officer is discharged or resigns prior to becoming entitled to a pension, the act provides that he shall be refunded one-half of the amounts so contributed.
Police officers first employed after December 30, 1943, are conclusively presumed to have accepted the benefits of the pension fund act. Each policeman here received the pension and accident coverage provided by the special act, and none of the plaintiffs was entitled to a pension at the time of discharge or resignation. The amounts deducted from the policemen's paychecks were reported by the City on each policeman's W-2 form for income tax purposes. On April 20, 1972, the refund provisions of the special act were amended by another special act[2] to provide a 100% refund of monies contributed by policemen to the pension fund after that date.
Appellants assert that the provisions of the special act which allow a refund of only one-half of the amounts deducted from their paychecks are unconstitutional in that they deny appellants the equal protection of the laws, deprive them of property without due process, and arbitrarily deprive them of property without compensation. They also assert that the refund provisions constitute a special law forbidden by Article III, § 11, and Article XII, § 6, Florida Constitution. Appellees, in addition *318 to controverting the claimed constitutional infirmities, argue that appellants are estopped from asserting these claims by virtue of having accepted the terms of the special act (especially § 18, raising a conclusive presumption of acceptance) as a part of their contracts of employment with the city. Inasmuch as a finding that appellants are estopped from disputing the statute's validity would eliminate the need to consider the constitutional issues raised, we deal with that issue first.

ESTOPPEL
Appellees' contention that an estoppel exists against appellants appears to be grounded upon the rule that a person may be estopped from asserting rights otherwise existing by virtue of the acceptance and retention, by one having knowledge or notice of the facts, of benefits from a transaction, instrument, regulation or statute which he might have rejected or contested[3], in this case the contract of employment with the city. By accepting the benefits of this employment contract, it is contended, appellants precluded themselves from rejecting or repudiating its burdens, including the forfeitures here involved. We are impelled to agree.
Appellees draw our attention to Anders v. Nicholson, 111 Fla. 849, 150 So. 639 (1933), which dealt in part with entitlement to refunds of mandatory salary contributions to a pension fund. In that case, the employee had participated in voluntary salary contributions under a plan providing for refund of all amounts so paid upon discharge from the city's employment; an amendatory act was then passed providing for mandatory salary contributions and for a refund, upon discharge, of only 50% of the amounts contributed. After determining that the employee was entitled to a refund of all sums contributed by him under the voluntary pension plan, we held the employee to be estopped from seeking a refund of sums contributed under the mandatory contribution plan in excess of the 50% refund specifically allowed by the relevant statute, on the basis that the employee had accepted the provisions of the statute by continuing in the employ of the city, since the city had no right to continue his employment under any other contract and the employee had no legal right to assert in judicial proceedings that the city did so.
Applying the reasoning of Anders to the instant case, it appears that, by accepting employment with the city while the special act was effective in its original form, the appellants estopped themselves from attacking the provision of the special act (which is in the eyes of the law a part of their employment contracts with the city) which provided for a refund of only 50% of the amounts deducted from their salary. If they were unsatisfied with this refund provision, they were free (at least in theory) to seek employment elsewhere or to lobby their elected state representatives for a change in the law; instead, they accepted the conditions of the employment contracts.
The "old" pension fund was not devoid of other considerations extended for the deductions; it provided for disability benefits, pensions in the event of death, and the like, as well as for retirement pensions, so that the policemen (or their families) received some concomitant benefits from their contributions while employed by the city. Having accepted the conditions of their contracts with the city and having enjoyed the benefits provided by these contracts while they remained in the city's service, the petitioners may not now reject the portions which displease them at this late date. One who accepts the benefits of a contract cannot, having retained these benefits, question the validity of the contract. Quinlan v. Green County (C.A. 6) 157 F. 33; Hoyt v. Hoyt, 213 Tenn. 117, 372 S.W.2d 300. See, generally, 28 Am.Jur.2d, Estoppel and Waiver § 59, especially *319 the multitudinous cases to this effect collected under note 20.

CONSTITUTIONAL ATTACKS
Even assuming that no estoppel was present in this case, petitioners' assault on the special act would be doomed to failure. Their contention that the special act is forbidden by our State constitution's prohibition of special acts relating to refund of monies overlooks the fact that the refund provision is but an incidental feature of an act dealing with pensions. The claim that the special act denies them the equal protection of the laws rests on the provisions of Chapter 185, providing for a 100% refund, and on the amendatory special act, providing for 100% refund of the mandatory contributions made after April 20, 1972. As to the latter, we note that all Orlando policemen are in the same position as are petitioners in that under the circumstances existing as to these petitioners they can obtain a refund of only 50% of the contributions made prior to April 20, 1972; so far as contributions made during the time with which we are concerned here, all Orlando policemen are treated equally. And a claim that equal protection is denied when the refund provisions of the special act are compared with those of the general act fares no better; it is a comparison of "apples and oranges". While the general act does in fact provide for a 100% refund, it does not provide for other benefits (pension for death in the line of duty, or for death from causes not connected with duty, etc.) provided for by the special act; perhaps even more importantly, the special act here in question establishes a pension fund, while the general act merely permits the establishment of a pension fund. The equal protection claims are without merit.
Nor will the assertion of a denial of due process aid the petitioners. They assert a denial of procedural due process in the city's failure to provide a hearing upon notice as to whether each particular officer wished to accept the terms of the special act (which was part of his employment contract). Merely to state the contention is to show its fallacy; is the city to provide a hearing before hiring the officer to determine if he wants to accept employment under conditions which the city is powerless to alter, after hiring him, when he has accepted those terms already, or just prior to his discharge or separation, when his clear economic interest is to repudiate portions of a contract whose benefits he has been accepting? This argument is clearly frivolous.
Finally, it is claimed that the refund provision is a denial of substantive due process in that it takes petitioners' property for a public use unreasonably and unnecessarily. Although this claim appears to have some merit at first blush, it too fails. As we stated in Anders v. Nicholson, supra, governmental employees have no property right in a pension fund unless their claim is based upon the law governing the fund, and the retention of part of the employee's salary does not make it any the less a public fund. It has been held by numerous courts in the various jurisdictions that mandatory salary deductions for a public employee pension fund do not give rise to private property rights in the fund monies until such time as the employee becomes eligible for the pension. See Blough v. Ekstrom, 14 Ill. App.2d 153, 144 N.E.2d 436 (1957); Devon v. City of San Antonio, 443 S.W.2d 598 (Tex.Civ.App. 1969); Grace v. City of Los Angeles, 249 Cal. App.2d 577, 58 Cal. Rptr. 388 (1967). And the fact that the amounts so deducted are reported as income on petitioners' W-2 forms does not necessarily mean that these sums are private property; mandatory contributions to the Social Security program are also reported on the W-2 form as income, and this does not give rise to any private property rights in the amounts so deducted. *320 Money may constitute income for purposes of the federal income tax without being property of the taxpayer. Lucas v. Earl, 281 U.S. 111, 50 S.Ct. 241, 74 L.Ed. 731 (1930). And even if the sums in question were considered private property, we are satisfied as to the necessity and reasonableness of the procedure involved here, by which the 50% of contributions forfeited, in effect "paid for" the various benefits which petitioners received under the city's pension plan. No denial of due process has been shown.
The decision of the Circuit Court of Orange County was correct, and it is hereby
Affirmed.
It is so ordered.
CARLTON, C.J., and ROBERTS, ERVIN, ADKINS, BOYD and McCAIN, JJ., concur.
NOTES
[1] This special act also exists in the form of a chapter of the city charter of Orlando. For purposes of clarity and consistency, the provisions will be designated as they are numbered in the special act, the numbering system of the charter provision being different. In all other material respects, the charter provisions and the special act are identical, and reference herein to the special act includes the relevant charter provisions.
[2] Ch. 72-632, Laws of Florida 1972.
[3] See 28 Am.Jur.2d, Estoppel and Waiver § 59.