QUESTION: May public funds be used, under ss. 112.08, 112.12, and145.131(3), F.S., to pay the premiums on group life insurance for public officers and employees that would provide paid-up life insurance or 100 percent participant refunds upon termination of employment or office?
SUMMARY: In providing group life insurance for its officers and employees and paying a portion of the premiums thereof, as authorized by ss. 112.08, 112.12, and 145.131(3), F.S., a public body should not authorize the refund of premiums paid by its officers or employees upon the termination of the office of employment; nor, pending judicial clarification, should the group policy provide, in addition to the ordinary group term life insurance, any benefits that will accrue immediately to the employee as a part of his personal estate, such as paid-up life insurance. Section 145.131(3), supra, provides that All or any portion of the payment of the costs of life, health, accident, hospitalization, or annuity insurance, as authorized in s. 112.08, for county officials and employees shall not be deemed to be compensation within the purview of this chapter; and all payments previously made from county funds for such purposes are hereby validated. Accord: s. 112.14, F.S., as amended by Ch. 72-338, Laws of Florida, providing that . . . It is also the purpose and intent of this law to provide authority for the payment of premiums or charges for group insurance for county officers whose compensation is fixed by chapter 145 in addition to the compensation provided in chapter 145. These provisions of law quite clearly authorize the sheriff — even though he is a county officer whose compensation is fixed by Ch. 145, F.S. — to have the benefit of the statutes authorizing the payment of premiums of group insurance from public funds, without violating s. 145.18 prohibiting such a county official from receiving compensation in excess of the salary provided for his office by Ch. 145. Thus, the only real question is whether the additional benefits referred to by you may be provided under group life insurance programs supported in part by public funds. Section 112.08, F.S., as amended (originally adopted in Ch. 20852, 1941, Laws of Florida), authorizes "each and every county, school board, governmental unit, department, board, or bureau" of the state to provide for "life, health, accident, hospitalization or annuity insurance, or all of any kinds of such insurance, for the officers and employees thereof, . . . ." And s. 112.12, F.S. (Ch. 65-538, Laws of Florida, as amended), authorizes the designated public agencies to pay all or part of the premiums or charges for "life, health, accident, or hospitalization insurance provided for its officers and employees pursuant to the provisions of s. 112.08." The use of public funds to pay all or a portion of the premiums of group life and hospital insurance policies of public officers and employees has generally been upheld by the courts of other states as against a contention that such payments are donations of public money in violation of the State Constitution. See McQuillin Municipal Corporations s. 12.173 (3rd ed. rev.); Riddlestorffer v. Rahway,196 A.2d 550 (N.J.Super. 1963). In the Riddlestorffer case, the court noted that contributions of public funds to pension plans had long been sustained and that the payment of health benefits by the city "is similarly compensation and an added inducement to seek municipal employment, thereby satisfying the public purpose requirement. . . ." Accord: Local 456 Int. Bro. of Teamsters v. Town of Cortlandt, 327 N.Y.S.2d 143, 149 (S.Ct., Westchester County 1971), stating that The law has developed to the point where the Courts of this State now recognize that when a municipality grants pensions, vacations or military leave, it is not conferring a gift on its employees but is compensating the employee as one of the terms and conditions of employment . . . , in some cases withheld or deferred until the completion of continued and faithful service. [citations] (Emphasis by the court.) The court noted, also, that the concept of providing medical and life insurance benefits as a part of the compensation "package" for employees, both public and private, is "a valuable tool in recruiting and keeping personnel on all levels. . . ." (Emphasis supplied.) This is the theory upon which the earlier cases upholding the use of public funds to pay a portion of the insurance premiums for public employees were based. See State ex rel. Thompson v. City of Memphis, 251 S.W. 46 (Tenn. 1923), and Nohl v. Board of Education of Albuquerque, 199 P. 373 (N.M. 1921). In the Thompson case, the court upheld a group insurance program for the employees of the city's water department upon the showing made by the city that it was "better enabled to retain skilled employees in its service, and is thereby better capacitated to furnish the inhabitants of the city at all times with an adequate supply of pure wholesome water." The group life insurance program upheld in Nohl was for teachers and employees of the board of education, the board having shown that the program prevented frequent changes in the teaching force and enabled the board to "secure and retain" the services of more efficient and loyal teachers than would otherwise have been possible. No Florida decision on the question has been found. However, in upholding the use of public funds to pay a portion of the cost of a pension plan for public officers and employees, the court said that the providing of pensions from public funds is in the nature of "compensation" for services previously rendered and for which pay was withheld to induce long and faithful service, and thus not an invalid donation of public funds under Art. VII, s. 10, State Const. See Voorhees v. City of Miami, 199 So. 313 (Fla. 1940). Accord: State v. Lee, 24 So.2d 798, 801 (Fla. 1946); State v. City of Tampa, 159 So. 292 (Fla. 1935); AGO 074-109. Assuming arguendo that the Florida courts would hold that public funds may be used to pay ordinary group term life insurance premiums for public officers and employees without violating Art. VII, s. 10, supra — which prohibits the state or local governmental entities from giving, lending, or using their taxing power or credit to aid any corporation, association, partnership, or person — I have considerable doubt that the courts would uphold any type of benefit that accrued and was payable without regard to the length of service or the continuation of employment of the employee — the basis upon which other forms of "compensation" are paid. For example, annual and sick leave accrue and payments therefor are made upon the basis of the months or years of public service rendered by the public employee. Similarly, health and accident group policies provide insurance coverage for public employees only during the period of their employment; and ordinary group term life insurance pays death benefits for the beneficiaries of a person who dies while in public employment. However, paid-up life insurance, with its concomitant values — such as cash surrender, cash loan, and "endowment" or "annuity" type options — is of immediate value to the employee and becomes an asset of his personal estate. While it would obviously be a great incentive to a person to become an employee of a public agency which provided this type of "windfall" benefit, paid-up life insurance is not related to past years of service nor does it contemplate a continuation of the employment in order to enjoy its benefits; and it would plainly do nothing towards assisting a public agency in retaining its skilled employees in public service. In these circumstances, it would seem that the providing of paidup insurance for public employees from public funds would be nothing more than a pure gratuity, unjustified by any public purpose other than the initial enticing of an employee from private industry into public employment; and I know of no case in which it has been held that this, alone, is adequate to convert what is essentially a donation or gratuity into a form of "compensation" properly payable during, or at the termination of, employment. Cf. State ex rel. Sanders v. Cervantes, 480 S.W.2d 888 (Mo. 1972), striking down a portion of a statute authorizing group health and life coverage for the dependents of living officers and employees on active duty. The court recognized that private business generally provides similar "fringe benefits" and that the city must compete for employees with private industry. But, it said, recognition of this fact . . . does not overshadow the basic truth that relators, the city, the general assembly and this court must resolve all such difficulties in compliance with the dictates of the citizens of this state as expressed in their constitution. Nor can the refunding of premiums to an employee upon the termination of his employment qualify as compensation, rather than a donation of public funds. I recognize that pension plans and retirement systems generally provide for a refund of contributions made by the employee upon the termination of his employment. But the employee or his beneficiaries ordinarily receive nothing under a pension plan or retirement system during the period of the employment. (Cf. Billings v. City of Orlando, 287 So.2d 316 [Fla. 1973], involving a pension plan authorizing the refund of only 50 percent of the employee's contributions upon termination of employment, where disability and other benefits were provided during the period of employment.) On the other hand, the employee who participates in a group life insurance program during his employment has received full coverage on his life during the period of his employment. Thus, a refund to him of his premium payments would have to be considered a mere gratuity and thus violative of Art. VII, s. 10, State Const., supra. In addition to the fact that the providing from public funds of additional benefits such as paid-up life insurance to an employee upon termination of employment is of doubtful validity, the statute itself prohibits, by implication, the payment of premiums from public funds for any type of group "annuity" policy. Cf. s.112.08, F.S., authorizing a public body to provide for "life, health, accident, hospitalization or annuity insurance" (Emphasis supplied.) for its officers and employees, and s. 112.12, id., authorizing the payment from public funds of "all or part of the premiums or charges for life, accident, hospitalization or health insurance" provided for its officers and employees. Under the rule of statutory construction expressio unius est exclusio alterius, the omission of the word "annuity" from the types of group insurance coverage to which public funds may be contributed compels the conclusion that public funds may not be contributed for this type of group policy [although it may be "provided" and the premium payments may be deducted from the employee's salary, see s. 112.21, F.S. (1974 Supp.)]; and this omission is indicative of a legislative intent that public funds may not be used to purchase benefits representing individual property rights or cash values, such as those of a paid-up policy of life insurance, which the employee retains regardless of whether he remains in public employment. In these circumstances, I have the view that, pending judicial clarification, a public officers' and employees' group life insurance policy which is paid for in part from public funds should not provide, in addition to the death benefits provided by ordinary group term life insurance, any benefits that will accrue immediately to the employee as a part of his personal estate, such as a paid-up policy of life insurance; and, in any event, the public body may not authorize the refund of premiums paid by the officer or employee under such policy upon the termination of his or her employment, as this would unquestionably be a pure gratuity. Your question is answered in the negative.