ALLEN, J.
The appellant challenges a final summary judgment declaring section 550.2614, Florida Statutes, unconstitutional as an unlawful exercise of the state’s police power. We affirm.
The appellant is an association representing a majority of thoroughbred racehorse owners and trainers in the state of Florida. The appellees are three Florida thoroughbred owners who do not belong to the association. The appellees filed a declaratory action against the Division of Pari-Mutuel Wagering of the Department of Business and Professional Regulation [hereinafter “the division”] seeking to have section 550.2614 declared unconstitutional and to enjoin the division from enforcing the statute. Section 550.2614 * provides that each race track shall deduct one percent of the total purse pool and pay that amount to the horsemen’s association representing the majority of the thoroughbred racehorse owners and trainers. § 550.2614(1), Fla. Stat. [hereinafter “the one percent provision”]. It also provides that owners and trainers are automatically enrolled in the majority association upon receipt of an occupational license from the division, unless the owner or trainer declines membership in writing within 30 days of receiving the license. Id. § 550.2614(3) [hereinafter “the membership provision”].
After the division declined to defend the action, the appellant successfully intervened. The appellees then filed a motion for summary judgment. Following a hear *451 ing on the motion, the court entered a final summary judgment declaring section 550.2614 an unlawful exercise of the police power because the one percent provision “does not provide a requirement that the monies received by the association be used for a justifiable state objective and does not describe how the funds paid to the association are to be spent.” The court further concluded that the membership provision could not be severed from the one percent provision because it “is not an act complete in itself, as the reference therein to ‘a horsemen’s association as defined in (1)’ would be a reference to a nonexistent subsection.” The court accordingly declared the statute in its entirety unconstitutional on its face and enjoined the division from enforcing its provisions.
As an initial matter, the appellant argues that the appellees do not have standing to challenge the statute. Under the plain language of the statute, however, clearly they do. Section 550.2614(1) requires each racetrack to deduct one percent of the total purse pool and pay that amount to a horsemen’s association representing the majority of the thoroughbred racehorse owners and trainers. It is undisputed that the appellees are thoroughbred racehorse owners. Thus, the purses that the appellees would otherwise receive are diminished by the one percent deduction made in favor of the appellant. These appellees therefore satisfy the general standing requirement that the case involve an actual controversy as to the issue or issues presented. See Department of Revenue v. Kuhnlein, 646 So.2d 717, 720 (Fla.1994).
The appellant nevertheless contends that only the purses of its members are diminished by the one percent deduction, and that the appellees are not members so their purses are not diminished. The appellant points to contracts between the appellant and the racetracks which direct the racetracks not to deduct the one percent from the purses of nonmembers. We are unpersuaded by this argument because the plain language of the statute at issue does not recognize an exception from the one percent provision for nonmembers. Indeed, these contracts must be viewed ■with some skepticism since they would appear to be contrary to the dictates of the statute.
The appellant also argues that the appellees are estopped to challenge the statute because they have accepted the benefits of the statute. As a factual basis for this argument, the appellant again points to contracts between the appellant and south Florida racetracks pursuant to which owners are entitled to receive larger purses than would otherwise be paid under the pari-mutuel laws. But the statute does not provide for these contract provisions or for any other benefit to owners or trainers. As will be discussed below, the statute places no obligation upon the association as to how funds deducted pursuant to the statute are to be expended and it specifies no benefit that is to be received by owners or trainers. This distinguishes the present case from decisions' such as Billings v. City of Orlando, 287 So.2d 316 (Fla.1973), and makes principles of estop-pel inapplicable.
On the merits, the appellant argues that the trial court erred in relying upon Horsemen’s Benevolent & Protective Association v. Division of Pari-Mutuel Wagering, 397 So.2d 692 (Fla.1981), in holding the one percent provision in the current statute unconstitutional. In Horsemen’s, the supreme court accepted the association’s argument that the improvement of racing in Florida so as to enhance state revenues would be a valid reason for enacting a statute similar to the statute at issue in the present case. But the court found
no reasonable relationship between the stated objective of the statute and the form of the statute chosen by the legislature to advance this purpose. Section 550.2615 contains no provision for how the funds paid to the horsemen’s associ *452 ation must be spent or that they must be spent in furtherance of the legitimate state objective herein advanced. It merely requires that they be spent in accordance with articles of association which may be amended at any time and which need not espouse goals consistent with the stated public purpose for the statute. This statute effectually requires payment of money to a private association to do with as it chooses. This is an unlawful exercise of the police power.
Id. at 695. The appellant argues that the present statute is constitutional because it, unlike the statute at issue in Horsemen’s, allows owners and trainers to opt out of membership in the association and thereby avoid payment under the one percent provision. But this argument again ignores the clear language of the statute’s one percent provision which does not exclude nonmembers from payment. And, in any event, the focus of the Horsemen’s holding was not upon the fact that payment to the association was compelled. As the above-quoted language demonstrates, the essential holding of Horsemen’s was that the statute was unconstitutional because the withheld funds could be spent by the association without regard to any permissible objective under the state police power.
Section 550.2614 suffers from the same constitutional infirmity suffered by the statute addressed in Horsemen’s. We agree with the trial court’s following analysis:
The only appreciable difference between the 1978 statute and the current Section 550.2614 is subsection (3), which provides that each thoroughbred owner and trainer, upon receipt of the required license, is to receive automatic membership in the association and be counted on its membership unless the individual declines membership in writing within 30 days after receipt of a license from the State. This addition does not provide a requirement that the monies received by the association be used for a justifiable state objective and does not describe how the funds paid to the association are to be spent. Therefore, the portions of the current Section 550.2614 that are substantially similar to the 1978 statute are still unconstitutional because of the Florida Supreme Court’s previous ruling in Horsemen’s.
The appellant argues that unconstitutional portions could be excised from the statute to leave the membership provision of subsection (3) intact. We do not agree.
The rule is well established that the unconstitutionality of a portion of a statute will not necessarily condemn the entire act. When a part of a statute is declared unconstitutional the remainder of the act will be permitted to stand provided: (1) the unconstitutional provisions can be separated from the remaining valid provisions, (2) the legislative purpose expressed in the valid provisions can be accomplished independently of those which are void, (3) the good and the bad features are not so inseparable in substance that it can be said that the Legislature would have passed one without the other, and (4) an act complete in itself remains after the invalid provisions are stricken.
Cramp v. Board of Public Instruction, 137 So.2d 828 (Fla.1962). In Cramp, the court left intact the remainder of a loyalty oath after striking one vague phrase, concluding that the “[ojther related provisions of the statute are not adversely affected.”
But subsection (3) is not severable under the test applied in Cramp. First, subsection (3) has no meaning without the definition of “a horsemen’s association” contained in the unconstitutional subsection (1). And we decline to exercise the legislative function of rewriting the statute to attempt to provide a definition. Second, the clear intent behind the statute was to provide funding to the association. The title of the statute is “Distribution of certain funds to a horsemen’s association.” Three of the four subsections deal specifically with the distribution of the funds. *453 The only reason for subsection (3) is to promote membership in the association that is to receive the automatic distribution of funds. This point is evident from subsection (4) which requires the division to “monitor the membership rolls of the horsemen’s association to ensure that complete, accurate, and timely listings are maintained for the purposes specified in this section.” (Emphasis added.) So far as the legislative intent is concerned, subsection (3) has no point if the funding provisions are stricken. While subsection (3), standing alone, may promote the interests of the appellant, it does not promote the legislative purpose for enacting section 550.2614. We accordingly also agree with the trial court’s conclusion that the membership provision is not severable.
The final summary judgment is affirmed.
LAWRENCE and BENTON, JJ., CONCUR.

 Section 550.2614, Florida Statutes, in its entirety reads:
550.2614 Distribution of certain funds to a horsemen’s association.—
(1) Each licensee that holds a permit for thoroughbred horse racing in this state shall deduct from the purses required by s. 550.2625, an amount of money equal to 1 percent of tire total purse pool and shall pay that amount to a horsemen’s association representing the majority of the thoroughbred racehorse owners and trainers for its use in accordance with the stated goals of its articles of association filed with the Department of State.
(2) The funds are payable to the horsemen's association only upon presentation of a sworn statement by the officers of the association that the horsemen’s association represents a majority of the owners and trainers of thoroughbred horses stabled in the state.
(3) Upon receiving a state license, each thoroughbred owner and trainer shall receive automatic membership in the horsemen’s association as defined in subsection (1) and be counted on the membership rolls of that association, unless, within 30 calender days after receipt of license from the state, the individual declines membership in writing, to the association as defined in subsection (1).
(4) The division shall adopt rules to facilitate the orderly transfer of funds in accordance with this section. The division shall also monitor the membership rolls of the horsemen's association to ensure that complete, accurate, and timely listings are maintained for the purposes specified in this section.