# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D18-3601

_____

PIPELINE CONTRACTORS, INC., a
Florida corporation, and THE
HANOVER INSURANCE COMPANY,
a New Hampshire corporation,

    Appellants,

    v.

KEYSTONE AIRPARK AUTHORITY,
a political subdivision of the City
of Keystone Heights, and
PASSERO ASSOCIATES, L.L.C., a
Florida limited liability
company,

    Appellees.

_____

On appeal from the Circuit Court for Clay County.
Don H. Lester, Judge.

July 10, 2019

PER CURIAM.

Pipeline Contractors, Inc., (Pipeline) and The Hanover
Insurance Company (Hanover) challenge the trial court's
determination that Keystone Airpark Authority (KAA) had
capacity to contract, to sue, and to be sued. We agree with the trial

court that estoppel applies to preclude this argument and affirm the final judgment in favor of KAA.

In 2008, Pipeline and KAA entered into a contract for the construction of new airport facilities at the Keystone Airpark. Pipeline's performance was guaranteed by a bond issued by Hanover. KAA did not pay everything that Pipeline asserted it was entitled to under the construction contract, and in 2010, Pipeline sued KAA for breach of contract. KAA counterclaimed for breach of contract based on defects in the work, and KAA filed a third-party complaint against Hanover seeking relief under the performance bond.

Little happened in the litigation for some six years. Then Pipeline and Hanover amended their answer and moved for summary judgment on KAA's claims, asserting for the first time that KAA's lawsuit should be dismissed because KAA was not a legal entity and did not have the capacity to contract, sue, or be sued. In short, the argument was that under the Uniform Special District Accountability Act of 1989 (Chapter 189, Fla. Stat. (1991)), any special district comprising more than one county required the Legislature's authorization. All of the KAA district was within the city limits of Keystone Heights, but the KAA district extended from Clay County west into Bradford County.[1] Nonetheless, when the KAA was formed in 1991, only the City of Keystone Heights, and not the Legislature, acted in establishing it.

_____

[1] This geographic peculiarity is the result of history. The airport was originally part of Camp Blanding when it was constructed during World War II. *See* The 42J Story, http://keystoneairport.com/the-42j-story/ (last visited July 2, 2019). In 1947, the airport property was acquired from the federal government. *Id.* In 1963, the Town of Keystone Heights was abolished, and the City of Keystone Heights established in its place. Ch. 63-1496, Art. I, *Laws of Florida* at 1698-1700. Title to the airport property remained vested in the City of Keystone Heights, and the City was given "all powers and duties, including police powers" over the property "as are exercised over those lands included in the corporate limits of the City." Ch. 63-1496, Art. XII, *Laws of Florida* at 1736-37.

In 1992, the Legislature amended the law to provide that legislative approval is not required for special districts comprising more than one county, so long as the entire district is within a single municipality. *See* § 189.403(3), Fla. Stat. (1992); *cf. Forsythe v. Longboat Key Beach Erosion Control Dist.*, 604 So. 2d 452, 455-56 (Fla. 1992) (holding that the pre-amendment version's plain text provided that a special district with territory in multiple counties was an independent special district requiring legislative authorization). Pipeline and Hanover contended that the legislative change did not cure the defect in KAA's earlier formation.[2]

The trial court rejected the lack of capacity defense, concluding that the court could deny Pipeline and Hanover's summary judgment motion without resolving whether KAA was validly created or whether it later had the right to contract, sue, or be sued. Instead, the court decided, because there was "no question that Pipeline and Hanover [had] received the benefits of the questioned contracts," Pipeline and Hanover were estopped from "challenging KAA's capacity to contract." After a seven-day bench trial, the trial court entered a final judgment in favor of KAA.[3]

Pipeline and Hanover now appeal the trial court's denial of summary judgment. Arguing that the trial court's application of

[2] Pipeline and Hanover acknowledge that if KAA lacks authority to contract, sue, or be sued, then Pipeline itself had no ability to initiate this litigation years ago, that it had no right to enforce its contract, and that Pipeline's claims—like KAA's—were due to be dismissed. Pipeline also argues that its entitlement to retain the hundreds of thousands of dollars received under the contract is not before this court.

[3] The detailed thirty-four-page final judgment resolved the dispute about construction defects and Pipeline's performance. The court ultimately awarded KAA a total of $3,217,661.81. Pipeline and Hanover do not contest the court's findings or the amount of the award. The only issue on appeal is whether the court should have denied all relief based on KAA's inability to contract, sue, or be sued.

estoppel was in error, Pipeline and Hanover contend that the court should have reached the merits of their argument regarding KAA's capacity and ruled in their favor. Pipeline and Hanover ask us to reverse the trial court on the issue of estoppel and remand the case with directions to vacate the final judgment and dismiss all claims between the parties.

The trial court relied on *Booske v. Gulf Ice Co.*, 5 So. 247 (Fla. 1888), in determining that estoppel applied. At issue in *Booske* was a contract between individuals and a corporation. *Id.* at 248. There was also a surety bond guaranteeing performance. *Id.* After litigation ensued, the principal and obligor on the bond cited Gulf Ice Company's improper corporate creation in arguing that they should be immune from liability on the contract. *Id.* at 250-51. In rejecting this argument, the Florida Supreme Court held:

> A person who has contracted with an association assuming to be incorporated and acting in a corporate capacity cannot, after having received the benefit of the contract, set up as a defense to an action brought by such company that the latter was not legally incorporated, or had no authority to enter into the contract in a corporate capacity.

*Id.* at 251.

Pipeline and Hanover argue that *Booske* and the principle underlying it is not applicable here because KAA purported to be a governmental special district, and the entities at issue in *Booske* and other cases were business corporations. Our review thus turns on whether a contract between private entities and a political subdivision under these circumstances is subject to the same estoppel principles.

Estoppel is an equitable doctrine "based on principles of fair play and essential justice and arises when one party lulls another party into a disadvantageous legal position." *Florida Dep't of Health & Rehab. Servs. v. S.A.P.*, 835 So. 2d 1091, 1096 (Fla. 2002). "'Estoppel' has been defined as 'the preclusion of a person from asserting a fact by previous conduct inconsistent therewith, on his own part, or the part of those under whom he claims.'" *Quality*

4

*Shell Homes & Supply Co. v. Roley*, 186 So. 2d 837, 840-41 (Fla. 1st DCA 1966) (quoting *Coogler v. Rogers*, 7 So. 391 (Fla. 1889)).

Pipeline and Hanover argue that KAA's improper organization *as a political subdivision* is the fact that makes estoppel inapplicable here, but we see no meaningful distinction. Just as estoppel can defeat a claim that a purported corporation was not validly created, so too can estoppel defeat a claim that a purported local special district was not validly created. In either instance, the principle is that one cannot contract with an entity as if it were validly created, reap the benefits of that agreement, and later disavow the contract based on the invalid creation. In fact, the doctrine has previously been applied to the benefit of political subdivisions in contract disputes. *See Billings v. City of Orlando*, 287 So. 2d 316, 318 (Fla. 1973) (estopping an argument by former police officers of the City that certain provisions of a contract were unconstitutional while noting that "[o]ne who accepts the benefits of a contract cannot, having retained these benefits, question the validity of the contract").

Here, Pipeline and Hanover treated KAA as if it were a properly organized entity with no issues of capacity for most of the parties' relationship. Pipeline performed (at least in part), accepted payment on the contract, and engaged in years-long litigation with KAA. Only after all that did Pipeline and Hanover assert any issues of capacity. Because they accepted the benefits of the contract through payment from KAA, Pipeline and Hanover were properly estopped from raising the argument that the contract was void in an attempt to avoid the burdens of the contract embodied by KAA's claims against them.

AFFIRMED.

RAY, C.J., and WETHERELL and BILBREY,[4] JJ., concur.

---

[4] Judge Bilbrey was substituted for an original panel member in this proceeding after oral argument. He has viewed the digital recording of oral argument.

_____

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

_____


David L. Worthy, Donald A. Niesen, and Christopher W. Lewis of Niesen, Price, Worthy, Campo, P.A., Gainesville, for Appellants.

James J. Taylor Jr. and Katelyn T. Hardwick of the Taylor Law Firm, P.A., Keystone Heights, for Appellees.