PER CURIAM.
By this appeal, the court is called upon to review the correctness of a final decree rendered by a chancellor in a controversy between the appellants [who were the defendants in the trial court] and the ap-pellee [who was the plaintiff].
Pursuant to ordinance and appropriate resolution, the appellee held an agreement permitting it to install benches within the corporate limits of the City of Miami, permitting advertising thereon for a period of 5 years. During the term the municipality, through its appropriate officials, attempted to interfere with the terms of the agreement by prohibiting the use of the bus benches in certain residential areas and ordering their removal therefrom. The instant action was commenced in the trial court by the appellee, seeking an injunction to restrain this action on the part of the municipal officials. The chancellor, in entering his final decree, found the contract between the parties binding, enjoined the City from enforcing resolutions which would impair the contract, but held that the appellee was subject to the provision of a subsequently enacted Metropolitan Dade County Ordinance.
In and by the terms of the final decree, the chancellor, in part, made the following findings of fact and conclusions of law:
* * *
“The pleadings allege and the testimony shows that, on November 14, 1961, the ‘City’ entered into a contract with ‘Company’ for the right to install bus benches under permit at designated bus stops for the convenience of the traveling public throughout the City of Miami, Florida, Plaintiff’s Exhibit #1. This contract was approved by city resolution November 14, 1961. The preamble to contract recites, ‘Bus service is a public utility and is charged with a public interest and duty accordingly, for the convenience and accommodation of the public, bus benches at bus stops fulfill a collateral public transportation need)’. It further recites that there is an increased need of such benches and that ‘Company’ has *51 increased its financial investment by-providing more benches at the request of the ‘City’ and that 'the company has manufactured and installed numerous public service bus benches at the request of the city for the benefit of the traveling public.’ It then recites that all parties agree ‘that the contract now existing for bus bench service between the parties be terminated by acceleration, and in contemplation of the additional reasons set forth herein, namely that the company should be able to amortise its increased financial investment, stands ready to enter into the City’s pedestrian bench program, and will provide bus bench revenue to the city regardless of the future ownership and operation of transit systems now servicing the city.’
* * *
“It is to be noted here that the contract is not exclusive but gives a continuing right or guarantee that the company will be able to receive permits so as to be enabled to amortize its increased financial investment. An examination of the City Bus Bench Ordinance shows that the provisions there for any person obtaining a bus bench permit are the same as for the company. * * *
“Summing up the contract, it can be seen that it is not a franchise, is not exclusive, and it allows and provides for the permitting of bus benches under the exact same terms and conditions as any person may do under the City Bus Bench Ordinance.

“Thereafter, by Resolution No. 34175, the City, on December 5, 1962, prohibited advertising on bus benches in residential zones, permitting advertising only in commercial zones at designated bus stops; required removal of benches containing advertising matter thereon in R-l and R-2 zones; required all benches containing advertising matter to be removed from public property and from rights of way abutting public property within thirty (30). days from the effective date of this. Resolution; required bus benches containing advertising matter in an R-3'. zone to be removed within six (6) months from the date of the Resolution; and required bus benches in R-4- and R-5 zones to be removed within-one (1) year from the effective date of this Resolution.
“The Court finds that this was an attempt by the City, by Resolution, to-amend both the zoning ordinances and the Bus Bench Ordinance of the City.. It is elementary that an ordinance cannot be amended by a Resolution, and it is apparent on the face that the Resolution fails by virtue thereof.
“After the passage of Resolution No. 34175 id., the City sought to enforce the provisions of the Resolution and to-force the removal of bus benches of ‘Company’ from the above zones, * * upon passage of Resolution No. 34175,. ‘City’ sent a certified copy to ‘Company’' with an accompanying letter saying:
“ ‘You will note that this resolution —set current policy as to the regulation and control of certain bus benches. This new Resolution therefore, contained all the provisions which modify the contract novo existing between your company and the City of Miami, and will act as your guideline for all future installations and removals.’
This was plainly an attempt on the part of the ‘City’ to modify the terms of the existing contract, to which ‘Company’ did not consent.
“The Plaintiff sought a declaratory decree as to the validity of its contract with the ‘City’ and contended that the adoption of Resolution No. 34175 was an invasion of its rights under the existing contract and was void because *52 it attempted by Resolution to amend existing ordinances. It further contended that ‘Company’, relying on the contract, had expended large sums of money to increase its bench program and the enforcement of the Resolution would cause it great damage and loss.
“The ‘City’ contended that the contract was void ab initio and that nothing that happened afterwards could breathe new life into it, relying on the decision in the case of CLARENCE SMITH v. BUS STOPS OF GREATER MIAMI, INC., 89 So.2d 221, Supreme Court of Florida, 1956, and further contended that the contract was a franchise and that, under Section 74 of the City Charter, required an approved vote by a majority of the qualified voters of the city.
“It is the finding of the Court that Section 3(hh) of the City Charter id. was sufficient and proper authority for the ‘City’ to enter into such a Bus Bench Contract. The contention that Section 3(hh) and Section 74 of the City Charter conflict was decided in the negative by the Supreme Court of Florida in CITY OF MIAMI vs. SOUTH MIAMI COACH LINES (1952 Fla.) 59 So.2d 52, when, in specifically referring to these two sections of the City of Miami Charter, it says:
“ ‘We believe they do occupy and function in different spheres' — Certain it is appellee might have applied under the provisions of Section 73 and 74, supra, for a franchise — It would have constituted a contract between the franchise holder and the city. Appellee did not solicit a franchise under the provisions of Sections 73 and 74, supra, but did seek and secure a license under Section 3(hh) — which may be altered, suspended or revoked by the commission only upon good cause shown (after due notice and an opportunity to be heard.’ (Italics supplied.)
“This is what the Plaintiff did in making the contract with the city. It got a permit or a license, and not a franchise and so Section 74 does not apply, but section 3(hh) of the City Charter does apply. * * *
* * *
“Now, with reference to the point that the contract is governed by SMITH vs. [Bus Stops of Greater Miami] CITY OF MIAMI (Fla.1956) 89 So.2d 221.
“First of all, it should be pointed out that the Court apparently did not specifically consider Section 3(hh) of the City Charter. Secondly, the point in case makes ‘that in the absence of express legislative authority, a city has no power to grant a private individual a privilege to use any portion of its streets or sidewalks for a special private purpose,’ is correct as far as it goes, but, in the instant case, the permits are for benches which, in addition to the advertising thereon, provide a public service for the people of the municipality, to-wit: benches for them to sit on while awaiting busses.”
* * *
The final decree arrived in this court with a presumption of correctness. See: Meadows Southern Construction Co. v. Pezzanti, Fla.App.1959, 108 So.2d 499; Lynch v. Coppola, Fla.App.1961, 129 So.2d 183; Groover v. Simonhoff, Fla.App.1963, 157 So.2d 541. It was incumbent upon the appellant to demonstrate error. See: Videon v. Hodge, Fla.1954, 72 So.2d 396; Frell v. Frell, Fla.App.1963, 154 So.2d 706; Groover v. Simonhoff, supra. A municipality is bound to recognize its contracts, the same as an individual [see: Williams v. City of Jacksonville, 118 Fla. 671, 160 So. 15, 98 A.L.R. 513; 23 Fla.Jur., Municipal Corporations, § 189] and one, party to a contract with a municipality, is entitled to the constitutional protection against impairment of it if the municipality attempts to *53 unilaterally change its obligations under a -valid agreement. See: Anders v. Nicholson, 111 Fla. 849, 150 So. 639; City of Sanford v. McClelland, 121 Fla. 253, 163 So. 513.
Measuring the contract in question against the principles enunciated above and the resolution of the City striking from its force and effect all of the residential areas, it is apparent that the chancellor’s actions were correct and should be affirmed.
Affirmed.