James A. Devito St. Petersburg Beach City Attorney St. Petersburg
QUESTION:
Can the City of St. Petersburg Beach unilaterally adopt an ordinance altering or modifying an existing ordinance which constitutes a franchise contract between the municipality and a public service company without violating the Florida Constitution or the United States Constitution?
SUMMARY:
A municipality may not unilaterally adopt an ordinance which alters, modifies, or amends an existing franchise contract between the municipality and a public service company, absent and express provision contained in such contract reserving that power. An ordinance purporting to amend an existing ordinance constituting a franchise contract between a municipality and a public service company is prohibited by s. 10, Art. I, State Const., and s. 10, Art. I, U.S. Const., which prohibit the passage of any law impairing the obligations of contracts.
You state in your letter that on February 16, 1971, the City of St. Petersburg Beach adopted Ordinance 177 which granted to the Florida Power Corporation a 30-year franchise to
 construct, operate and maintain in the said City of St. Petersburg Beach, all electric power facilities required by the Grantee for the purpose of supplying electricity to Grantor, its inhabitants and the places of business located within its boundaries. [Section 1, City of St. Petersburg Beach Ordinance 177.]
The franchise ordinance provides that the grantee, within 30 days after each anniversary of the effective date of the franchise grant, pay to the city:
 . . . an amount which added to the amount of all taxes, licenses, and other impositions levied or imposed by the Grantor upon the Grantee's electric property, business or operations, for the preceding tax year, will equal 6% of Grantee's revenues from the sale of electric energy to residential and commercial customers within the corporate limits of the Grantor for the twelve months preceding the applicable anniversary date. [Section 4, City of St. Petersburg Ordinance 177.]
The power company subsequently accepted the franchise by letter, dated March 29, 1971. You indicate that the city now proposes to amend s. 4 of Ordinance 177 to provide that the franchise grantee `pay to the [city] . . . 6% of the grantee's revenues from the sale of electrical energy to residential and commercial customers within the corporate limits of the [city],' and the fee `be calculated on a monthly basis and payable . . . on or within 30 days following the last day of the month on which the fee is based.' The Florida Power Corporation, according to your letter, objects to any modification of the franchise contract evidenced by Ordinance 177.
A franchise is generally defined as a special privilege, conferred by the government on an individual or corporation, which does not belong to the citizens by common right. See, e.g., Winter v. Mack,195 So. 225 (Fla. 1940); Leonard v. Baylen Street Wharf Co.,52 So. 718 (Fla. 1910); and West Coast Disposal Service, Inc. v. Smith, 143 So.2d 352 (2 D.C.A. Fla., 1962); see generally
McQuillin Municipal Corporations s. 34.03. While the power to grant franchises generally rests in the Legislature, this power may be conferred upon municipalities by the Legislature; see Stateex rel. Buford v. Pinellas County Power Co., 100 So. 504 (Fla. 1924), and 62 C.J.S. Municipal Corporations ss. 192 and 253. Under the broad home rule powers granted by the Municipal Home Rule Powers Act (Ch. 166, F. S.) pursuant to s. 2(b), Art. VIII, State Const., municipalities possess the `governmental, corporate andproprietary powers to enable them to conduct municipal government, perform municipal functions and render municipal services . . . .' Section 166.021(1), F. S.; emphasis supplied. They may enact legislation on any subject matter upon which the State Legislature may act except those subjects expressly prohibited by the Constitution or expressly preempted to the state or county government by the Constitution, general law, or county charter. Section 166.021(3). Thus, under the broad grant of powers contained in Ch. 166, and in the absence of any express constitutional or statutory provision to the contrary, it appears a municipality possesses the power to grant franchises. See also
s. 180.14, F. S., which authorizes municipalities to grant to private companies or corporations.
 the privilege or franchise of exercising its corporate powers for such terms of years [not to exceed 30 years] and upon such conditions and limitations as may be deemed expedient and for the best interest of the municipality . . . .
And see ss. 167.22 and 167.23, F. S. 1971, which provided for the term and conditions of a franchise granted by a municipality. Although Ch. 167 was repealed by Ch. 73-129, Laws of Florida, this repeal is not to be interpreted `to limit or restrict the powers of municipal officials, but shall be interpreted as a recognition of constitutional powers.' Section 166.042(1), F. S.
In exercising this power to grant franchises, the municipality acts in its proprietary capacity or function. See, e.g., Daly v. Stokell, 63 So.2d 644, 645 (Fla. 1953), in which the court stated that
 any contract . . . that redounds to the public or individual advantage and welfare of the city or its people is proprietory [sic] while governmental function, as the term implies, has to do with the administration of some phase of government, that is to say, dispensing or exercising some element of sovereignty.
See also St. Joe Natural Gas Co. v. City of Ward Ridge,265 So.2d 714 (1 D.C.A. Fla., 1972) and cases cited therein; cf. 63 C.J.S.Municipal Corporations s. 1052a(2). In acting in such proprietary capacity, the municipality occupies the same position as that occupied by a private corporation and is generally governed by the same rules and subject to the same restrictions and governmental supervision as any corporation engaged in the same or similar business. 63 C.J.S. Municipal Corporations s. 1050(b). Thus the franchise contract is governed by the ordinary law of contracts. Once the contract has been accepted, it becomes an irrevocable contract unless the right to revoke is expressly reserved within the terms of the contract; moreover, it is entitled to the same protection under constitutional guarantees as other property. SeeEx parte Amos., 114 So. 760 (Fla. 1927), (`A franchise is property within the constitution, and in respect to its enjoyment and protection, it is regarded by law precisely as any other property.'); Winter, supra; Leonard, supra; and McQuillinMunicipal Corporations ss. 34.06 and 34.69. Thus, unless the power to do so is reserved in the contract, the municipality cannot modify or amend the franchise after it is granted when it lessens the rights and privileges of the company or imposes additional burdens on it. McQuillin, supra, at s. 34.44.
Both the United States and the Florida Constitutions prohibit the passage of any law impairing the obligations of contracts. See s. 10, Art. I, U.S. Const., and s. 10, Art. I, State Const. The laws existing at the time and place of the contract form a part of it and the contract rights acquired therein may not be impaired by subsequent legislation in the absence of provisions in the contract reserving such powers. See Yamaha Parts Distributions, Inc. v. Ehrman, 316 So.2d 557 (Fla. 1975), in which the Florida Supreme Court refused to apply to a franchise agreement legislation subsequently enacted. The courts of this state have previously held that the constitutional prohibition against the impairment of contracts is applicable to municipalities and municipal contracts. See, e.g., Anders v. Nicholson, 150 So. 639
(Fla. (1933), (constitutional prohibition against laws impairing obligations of contract applies to contracts with state and municipalities as well as contracts between individuals) and City of Miami v. Bus Benches Co., 174 So.2d 49 (3 D.C.A. Fla., 1965), (party to contract with municipality entitled to constitutional protection against impairment of it if municipality attempts to unilaterally change its obligations under valid agreement); seealso Broughton v. Pensacola, 93 U.S. 266 (1876), (inhibition of Constitution which preserves the sacredness of contracts against the state's interference applies to liabilities of municipal corporations created by its permission). The constitutional prohibition is against the passage of any law impairing the obligations of contracts. While the Legislature may confer upon municipalities the power to grant franchises, the exercise of this power by a municipality remains the act of the state. See Day v. City of St. Augustine, 139 So. 880, 884 (Fla. 1932), in which the court, considering the action of a municipality in granting a franchise to construct a bridge over a navigable river and collect tolls, stated that `such franchise cannot be assumed or exercised without legislative authority. The grant of a franchise when made binds the public, and is directly or indirectly the act of the state.' See also Tampa Northern Railroad Co. v. City of Tampa,107 So. 364 (Fla. 1926), in which the court stated that a `municipal ordinance within the power delegated by the Legislature is a state law within the meaning of the federal constitution.' See also s.166.041(1)(a), F. S., in which a municipal ordinance is defined as the `official legislative action of a governing body, which action is a regulation of a general and permanent nature and enforceableas a local law.' (Emphasis supplied.) In light of the foregoing, I am of the opinion that, until judicially determined to the contrary, a municipal ordinance, as an official act, enforceable as a local law and enacted pursuant to either a charter act or the home rule delegation of power under s. 2(b), Art. VIII, and the Municipal Home Rule Powers Act, is a `law' for the purposes of the prohibition against the passage of any law impairing the obligations of contracts.
Applying these principles to the situation presented in the instant inquiry, it appears that the City of St. Petersburg Beach entered into a binding franchise contract with the Florida Power Corporation when the agreement as represented by Ordinance 177 was accepted by the power company. See generally McQuillin MunicipalCorporations s. 34.43 and 62 C.J.S. Municipal Corporations s. 258 regarding acceptance of franchise agreements. The franchise granted therein was for a term of 30 years. An examination of Ordinance 177 reveals no provision which reserves to the city the power to amend or modify its terms. Proposed Ordinance 343 as `an official legislative action of a governing body, which action is a regulation of general and permanent nature and enforceable as a local law,' (see s. 166.041(1)(a), F. S.) operates to alter or modify the original terms of the franchise contract by increasing the franchise fee payable to the city and changing the method of calculating the fee from an annual basis to a monthly basis. Such an alteration or modification of the franchise contract is contrary to the constitutional prohibition contained in both the United States and the Florida Constitutions against the impairment of the obligations of contracts. Thus, until judicially determined otherwise, I am of the opinion that under the express terms of s.166.021(3)(b), F. S., which prohibits a municipality from acting on any subject expressly prohibited by the Constitution, the municipality, absent such reservation of authority to unilaterally amend or modify the terms of the franchise granted by the municipality and accepted by the public service company, may not unilaterally alter or modify the franchise contract in question.
Your question is therefore answered in the negative.
Prepared by: Joslyn Wilson, Assistant Attorney General