ERNEST A. ANDERS, *et al.,* CITY COMMISSIONERS, v. W. W. NICHOLSON.

150 So. 639.
En Banc.
Opinion Filed Sept. 20, 1933.
Rehearing denied Oct. 30, 1933.

850

*Austin Miller* and *Emmet Safay,* for Plaintiffs in Error;

*Paul C. Marion,* for Defendant in Error;

*William A. Stanley,* as Amicus Curiae.

BUFORD, J.—W. W. Nicholson instituted mandamus proceedings in the Circuit Court of Duval County to require the proper officials of the City of Jacksonville to pay to him a certain fund which had accumulated under the provisions of Chapter 8277, Laws of Florida, Special Acts of 1919, under the provisions of which all persons in the employ of the City of Jacksonville at the time of the passage of said Act were entitled to participate in the benefits therein and thereby created, provided they filed their written election so to do with the trustees of the pension fund within six months from date of passage of said Act, and thereafter paid the assessment required thereby; that said Act provided that any member of the pension fund upon being discharged from the service of the City, shall be refunded all payments made by him to the fund, with interest thereon at the rate of four per cent. (4%) per annum; that at the time of the passage of said Act the petitioner was in the employ of the City of Jacksonville and filed his written election to participate in the fund within the time and in the manner prescribed by the Act, and that each month thereafter two per cent. (2%) was deducted from his salary and placed in the pension fund; that petitioner was discharged by the City on February 2, 1932, and he thereupon became entitled to a refund of all payments made by him to the pension fund, with interest thereon at the rate of four per cent. (4%) per annum.

The respondents moved to quash the alternative writ on the ground that Chapter 8277, Acts of 1919, had been amended by Chapter 11566, Special Acts of 1925, and that under the provisions of the Act as amended petitioner was

only entitled to refund of fifty per cent. (50%) of the amount contributed by him to the pension fund without interest. The motion was denied.

Thereafter, a stipulation was entered into between the parties setting forth, the amount due the petitioner under the original Act, the amount due him under the amendatory Act, and admitting that there was sufficient money in the hands of the respondents in the fund from which petitioner should be paid to pay petitioner's claim in full under the provisions of either statute. That final judgment was entered by the Honorable George Couper Gibbs in which he found as follows:

"It appearing to the Court, from said pleadings and from said stipulation of facts; that on the 24th day of May, A. D. 1919, Chapter 8277, Laws of Florida, 1919, providing for pensions for employees of the City of Jacksonville, became effective; that under the provisions of this Act, a pension fund was created for the benefit of any employee of the City of Jacksonville, except members of the Police Department and Fire Department, who should within the time therein prescribed, elect in writing, to participate in the benefits thereby created, and pay the assessments required thereby; that Section 8, of said Act, provides that 'When an employee is discharged all payments made by him shall be refunded with interest at the rate of four per cent. per annum'; that at the time said Act became a law, the petitioner, W. W. Nicholson, was employed by the City of Jacksonville, in its Sewer Department, and not in its Police Department or Fire Department, and on the 13th day of June, A. D. 1919, and within six months from the date of the passage of said Act, voluntarily filed his election, in writing, to participate in the benefits created by said Act; that the petitioner continued in the employ of

said City from the date of the passage of said ,Act until the 2nd day of February, A. D. 1932, when he was discharged from such employment, and that during such employment there was, pursuant to the provisions of said Act, and the written election of the petitioner, deducted each month, by said City, from petitioner's salary two per cent. thereof, as payments by the petitioner to the Pension Fund created under the provisions of said Act; that the petitioner has requested the respondents, as Trustees and Treasurer, respectively, of said Pension Fund, to refund to him the amount to which he became entitled, under the provisions of the aforesaid Act, to receive, upon his said discharge; that the respondents have refused to pay the petitioner, from said Pension Fund, the amount demanded by him, contending that Sec. 8 of Chapter 8277, Laws of Florida, 1919, was amended by Chapter 11566, Laws of Florida; 1925, and that under the provisions of Sec. 8 of the 1919 Act, as amended by Sec. 5 of the 1925 Act, petitioner, upon his discharge, was only entitled to be paid out of said Pension Fund fifty per cent. of the total amount, without interest, contributed by him to said fund; that Chapter 8277, Laws of Florida, 1919, is unlike the ordinary Pension Laws set out or referred to in most if not all of the authorities submitted by counsel herein, in that it does not appear to have been compulsory upon the employees, under the provisions of this Act, to join said Pension Fund or to make any contributions thereto or to participate in the benefits created thereby, but that an employee might voluntarily do so, if he so elected; and it appears to the Court from the facts submitted by the respective parties and the law applicable thereto that upon the filing by the petitioner of his written election to participate in the benefits of this Act, a voluntary contract was entered into by and between the petitioner and the City of Jacksonville, a Municipal Cor-

poration, which no subsequent Act of the Legislature could legally impair and that Chapter 11566, Laws of Florida, 1925, is ineffective as regards the petitioner and cannot in any manner affect his rights already vested under his contract with said Municipality."

We approve the finding of the court.

Chapter 8277, *supra,* entitled "An Act Providing for Pensions for Employees of the City of Jacksonville" does not create a fund to be derived from compulsory assessments, but it did create a fund which could be participated in by any employees of the City of Jacksonville holding permanent positions other than Members of the Police Department and Fire Department, upon complying with Section 3 of the Act, which was as follows:

"All persons entering the employ of the City subsequent to the passage and approval of this Act, shall be required to file their written election with the City Commission on or before six months from the date of their employment in order to entitle them to participate in the benefits conferred by this Act. Any person desiring to participate in the benefits conferred by this Act shall sign an application within the time herein prescribed, on a form prescribed by the Trustees hereinafter designated, which shall be considered their written election to participate in the benefits herein and hereby conferred. After the passage of this Act, any person employed who shall have reached the age of forty-five at the time of their employment shall not participate in the funds herein and hereby provided for."

This legislative Act constituted merely an offer on the part of the City to allow certain of its employees to participate in a Pension Fund upon condition that the employee accept the terms of the offer and contributed a certain part of his salary toward the creation and maintenance of the fund. This, as was said by the learned Circuit Judge, is

entirely different from those cases in which a pension fund is created and all officers and employees of the City coming within the purview of the Act are required, regardless of their inclination in the premises, to allow a part of their salary to be appropriated for the creation and maintenance of the fund.

The question here is whether or not the statute together with the employee's voluntary acceptance of the terms of the statute and his voluntary contribution to the fund under the terms thereof, constitutes a contract which may not be impaired by future legislative action without offending Section 17 of the Declaration of Rights of the Florida Constitution and Section 10, Article I, of the Federal Constitution.

It is well settled that the prohibition contained in the above organic laws applies to states and municipalities as well as to individuals. See Woodruff v. Trappnal, 13 Law. Ed. 383.

In Board of Commissioners of Everglades Drainage District v. Forbes, 80 Fla. 252, 86 Sou. 199, we said:

"It is also settled that constitutional provisions against impairing the obligation of a contract do not apply to obligations imposed by the law without the assent of the party bound, even though by a legal fiction they may be enforced in an action in form *ex contractu*. In other words, the class of contracts protected are voluntary—that is, based on the assent of the parties, expressly or impliedly given. That class of obligations aptly styled 'quasi contract' are not embraced within the constitutional guarantee against the passage of a law violating the obligation of a contract. Louisiana, *ex rel.*, Folsom v. Mayor, etc., of City of New Orleans, 109 U. S. 285, 27 L. Ed. 946; 3 Sup. Ct. Rep. 211; State v. City of New Orleans, 38 La. Ann. 119, 58 Am. Rep. 168; Freeland v. Williams, 131 U. S. 405, 33 L. Ed.

193, 9 Sup. Ct. Rep. 763; Mexican Nat. Ry. Co: v. Mussette, 86 Tex. 708, 26 S. W. Rep. 1075; 24 L. R. A 642; 12 C. J: p. 1053, Secs. 690,·691; 6 R. C. L. p. 326, Sec. 316."

Quasi contracts are defined in Vol. 13 C. J. 244, as:

"A class of obligations which are imposed or created by law without regard to the assent of the party bound, on the ground that they are dictated by reason and justice, and which are allowed to be enforced by an action *ex contractu*. They rest solely on the legal fiction and, are not contract obligations at all in the true sense, for there is no agreement."

The leading pension case in this country appears to be that of Pennie v. Reis, reported 33 Law Ed. 426. In that case it is said:

"Notwithstanding, therefore, in this case, the petitioner avers that the deceased police officer contributed out of his salary two dollars a month, pursuant to the law in question, and, in substance, that the fund which was to pay the one thousand dollars claimed was created out of like contributions of the members of the police, the court, looking to the statutes, sees that, in point of fact, no money was contributed by the police officer out of his salary, but that the money which went into that fund under the Act of April 1, 1878, was money from the State retained in its possession for the creation of this very fund, the balance—one hundred dollars—being the only compensation paid to the police officer. Though called part of the officer's compensation, he never received it, or controlled it, nor could he prevent its appropriation to the fund in question. He had no such power of disposition over it as always accompanies ownership of property. The statute, in legal effect, says that the police officer shall receive as compensation each month not exceeding one hundred dollars, or such sum as may be fixed after June 1, 1879, by a Board of Commis-

sioners created under the Act, and that, in addition thereto, the State will create a fund by appropriating two dollars each month for that purpose from which, upon his resignation for bad health or bodily infirmity, or dismissal for mere incompetency not coupled with any offense against the laws of the State, a certain sum shall be paid to him, and, upon his death, a certain sum shall go to his legal representative.'

And further in that opinion is is said:

"If the two dollars a month retained out of the alleged compensation of the police officer had been in fact paid to him and thus became subject to his absolute control and after such payment he had been induced to contribute it each month to a fund on condition that, upon his death a thousand dollars should be paid out to his representative, a different question would have been raised with respect to the disposition of the fund or at least of the amount of the decedent's contribution to it. Upon such a question we are not required to express any opinion. It is sufficient that the two dollars retained from the police officer each month, though called in the law a part of his compensation, were, in fact, an appropriation of that amount by the State each month to the creation of a fund for the benefit of the police officers named in that law, and until used for the purposes designed, could be transferred to other parties and applied to different purposes by the Legislature."

So it is, that the last paragraph quoted from that case shows that the court there recognized that a different rule might be applied to a case like the one at bar from that which was applied in that case. In that case under the law, and without the consent of the employee, a portion of his salary was retained and never became his property. While in this case a portion of the salary was retained not because of the existence of the law, but because the employee voluntarily consented and agreed in writing for that

portion of his salary to be retained for the purposes contemplated by the legislative Act and there was no difference in principle in allowing it to be thus retained and in receiving it from the Municipality and handing it back to be placed in this fund.

In all the cases cited by counsel for plaintiffs in error to support their contention there was absent the element of voluntary contribution to the fund. In State, *ex rel.,* King v. Board of Trustees, etc., of Kansas City, 184 S. W. 929, it is said:

"Governmental employees can have no property right in a pension fund, nor can those claiming under them have any such right, except their claim be based upon and come within the laws governing the funds, and the city's retention of part of a fireman's salary and the placing of it in the relief fund as authorized by Revised Statutes, 1909, Chapter 9888, part of the fireman's pension Act, does not make it any the less a public fund, nor do the moneys going into the said fund cease to be public moneys."

But in this case the contribution to the fund did not depend upon the fireman's voluntarily relinquishing a part of his salary to augment the pension fund.

The law applicable in this case, it appears to us, is that which applies to beneficial associations.

In 35 C. J., page 35, it is said:

"Alterations made in the constitution and by-laws of a fraternal benefit society, whether by amendment or repeal of existing provisions or by the enactment of new provisions, will be given a prospective operation unless it clearly appears that they were intended to operate retrospectively, even though the laws of the society expressly authorize alterations therein, and although the member agrees to be bound by future changes; and, where a retrospective op-

eration was intended, the alterations do not govern the rights and liabilities of pre-existing members and their beneficiaries if vested rights would thereby be defeated or the obligation of contracts be impaired. So long, however, as they do not impair pre-existing contracts of insurance or interfere with vested rights, and are reasonable, alterations in the constitution and by-laws, if intended to operate retrospectively, enter into and become a part of those contracts, and are binding on the society and its members and their beneficiaries, where the original constitution or by-laws reserve to the society the right to make alterations therein, and the contract as made expressly subjects the member to the constitution and by-laws, or where the member expressly agrees to be bound, not only by the existing laws, but also by such as may be afterwards enacted."

Mr. Cooley in his work on Constitutional Limitations, 8th Ed, Vol. 1, page 582, says:

" 'The obligation of a contract,' it is said, 'consists in its binding force on the party who makes it. This depends on the laws in existence when it is made; these are necessarily referred to in all contracts, and forming a part of them, as the measure of the obligation to perform them by the one party and the right acquired by the other. There can be no other standard by which to ascertain the extent of either, than that which the terms of the contract indicate, according to their settled legal meaning; when it becomes consummated, the law defines the duty and the right, compels one party to perform the thing contracted for, and gives the other a right to enforce the performance by the remedies then in force. If any subsequent law affect to diminish the duty or to impair the right, it necessarily bears on the obligation of the contract in favor of one party, to the injury of the other; hence, any law which in its operation amounts to a denial or obstruction of the rights ac-

cruing by a contract, though professing to act only on the remedy, is directly obnoxious to the prohibition of the Constitution. It is the civil obligation of contracts which (the Constitution) is designed to reach; that is, the obligation which is recognized by, and results from, the law of the State in which it is made. If, therefore, a contract when made is by the law of the place declared to be illegal, or deemed to be a nullity, or a *nude pact,* it has no civil obligation; because the law in such cases forbids its having any binding efficiency or force. It confers no legal right on the one party, and no correspondent legal duty on the other. There is no means allowed or recognized to enforce it; for the maxim is *ex nudo pacto non oritur actio.* But when it does not fall within the predicament of being either illegal or void, its obligatory force is coextensive with its stipulations.' "

In Ball v. Board of Trustees of Teachers' Retirement Fund, 58 Atl. 111, the Supreme Court of New Jersey, speaking through Mr. Justice SWAYZE, said:

"This is an action brought against a public board created by Acts of the Legislature (P. L. 1896 p. 58; P. L. 1899 p. 475) which are now embodied in Article 25 of the school law of 1903 (P. L. 1903 p. 80). The Board was originally created for the purpose of administering a fund made up (1) of contributions of teachers who elect to come under the provisions of tht Act; (2) of money and property received by donation, legacy, gift, bequest, or otherwise, and (3) 'of all other methods of increment as may be duly and legally devised for the increase of the fund.' The section of the Act of 1896 important in the present case is Section 3. That section provides that whenever any teacher entitled to the benefits of the Act has taught in the public schools for twenty years, and becomes incapacitated from performing the duties of a teacher, such teacher shall, at

his or her request, be retired as a teacher, and shall thereafter receive an annuity out of said fund. The other provisions of the section are not material to the present question. The Act of 1899 amended this section by making the retirement of the teacher dependent upon the approval of a board of trustees, so that thereafter the incapacitated teacher was not entitled to receive the annuity merely upon his or her request, as under the Act of 1896. The amended section provided that the decision of the board of trustees upon any application for such annuity should conclusively determine the right of the applicant thereto. The difference between the Act of 1896 and the Act of 1899 is that under the former the incapacitated teacher had an absolute right to the annuity upon compliance with the then prescribed conditions; under the latter the right depended on the action of the board of trustees. It is upon this distinction that the plea which has been demurred to relies. The declaration avers a compliance with all the conditions required by the Act of 1896, except that payment of 20 per cent. of the salary, and, as to that, avers that the plaintiff has tendered herself ready and willing to pay, and is now ready and willing so to do, and that the defendant refused to receive the same and expressly waived payment thereof. The plea demurred to, after setting out the provisions of the Act of 1899 above referred to, avers that the board had not decided upon the plaintiff's application, which is still pending before the board and undetermined. The question for solution, therefore, is whether the rights of the plaintiff acquired by her under the Act of 1896 can be taken away by subsequent legislation.

"The legal relation between the plaintiff and the defendants is that of contract. By electing to accept the provisions of the Act of 1896, and making or tendering the necessary payment, the plaintiff, when incapacitated, became

entitled to the annuity, which although not a personal obligation of the board of trustees, was payable to her out of the fund. The terms of the agreement are to be ascertained by reference to the statute. When this agreement was once made, it could not be altered without the consent of both parties thereto, and upon sufficient consideration. The fact that the terms of the agreement were embodied in an Act of the Legislature does not change its essential character as a contract, and it was beyond the power of the Legislature to impair the obligation of this contract by subsequent legislation."

It will be noted that the petitioner in this case is not claiming a pension under the provisions of the Act on retirement, but is claiming the refund of the amount of money which had accrued to the fund from his salary, plus four per cent., under the provisions of Section 8 of the Act, which reads as follows:

"In case of the voluntary resignation of an employee all payments made by him to said fund shall be returned to him without interest, but when an employee is discharged, all payments made by him shall be refunded with interest at the rate of four per cent. per annum. Any person receiving a pension under this Act shall not be thereby barred from engaging in other business."

And so it is that by the acceptance of the terms and conditions of Chapter 8277, Acts of 1919, the Relator entered into a contractual relation with the City of Jacksonville by which he was entitled to receive certain benefits and, in the event of being discharged while the provisions of that Act obtained, he was entitled to a refund of the amount paid into the fund, plus four per cent., and his rights accruing under the provisions of that Act could not be abrogated by any subsequent statute.

When, however, the Legislature amended Chapter 8277, *supra,* by the provisions of Chapter 11566, Acts of 1925, and the petitioner continued to pay into the fund after that Act became effective he will be estopped from contending that he did not as to all payments made after the effective date of Chapter 11566, *supra,* accept the terms of the Act as thereby amended. Under the amendatory Act he was only entitled to receive, in case of discharge, 50% of the amount contributed by him after the effective date of that Act. But this Act could not affect his right to receive the full amount which he has paid under the original Act, plus four per cent. interest.

It follows that the judgment of the Circuit Court was erroneous in adjudging the Relator to be entitled to receive refund of the full amount which he is shown to have paid into the pension fund together with four per cent. interest. The judgment must, therefore, be reversed, with directions that the Circuit Court permit the amendment of the alternative writ of mandamus to conform to the views herein expressed and thereupon to proceed with the cause in accordance with the law and not inconsistent with this opinion.

It is so ordered.

Reversed.

DAVIS, C. J., and WHITFIELD, ELLIS, TERRELL and BROWN, J. J., concur.

## ON PETITION FOR A REHEARING

PER CURIAM.—This was a judgment in a mandamus proceeding and the duty devolved upon the court to notice and correct fundamental errors in the proceedings shown by the record, whether specifically argued or not. See State, *ex rel.,* Barrs v. Pritchard, 111 Fla. 122, 149 Sou. Rep. 58, decided at the present term. This is so because

the object of a writ of mandamus directed to public officers is to coerce performance of a duty, and not to create a duty. Therefore, if no duty to do the thing commanded exists under the law, the Court should not order it to be done, whether objection on that ground be interposed or not. The absence of duty is therefore a fundamental defect which, if it appear in a writ of mandamus, should be noticed and corrected by the Courts of their own motion. A consideration of this rule disposes of so much of the petition for rehearing as suggests that a rehearing should be granted because the case was decided in part on propositions of law not raised in plaintiff in error's briefs.

The holding of the Court was that after Chapter 11566, Acts of 1925, became effective, the only law under which Nicholson could continue to make payments into the city pension fund was the amended statute, therefore the *duty* of the city as to the refund of any moneys paid in after Chapter 11566 became effective, is that found in the amended law, not the pre-existing law. To hold otherwise would mean that the city officials and the police officers could, at their option, simply disregard the new law, by relating their actions back to a law which the Legislature had affirmatively changed, evidently for the welfare of all concerned.

The estoppel mentioned in the opinion is the estoppel naturally existing against a police officer's claim asserted as against the force of a statute which the police officer must have accepted, if he continued to work in the city service, since the city had no right to continue an employment under a law which the Legislature had discontinued, and the police officer had no legal right to assert in judicial proceedings that the city did so.

The petition for rehearing should be denied and it is so ordered.

DAVIS, C. J., and WHITFIELD, TERRELL and BUFORD, J. J., concur.

BROWN, J., dissents.

BROWN, J. (dissenting).—I think the petition for rehearing filed by the defendant in this case should be granted upon grounds 2, 3, 4, 5 and 6 of the petition for reahearing, which read as follows:

"2. That the question of estoppel was not stated, in the brief of plaintiffs in error, as a question before this Honorable Court, and was not argued by the attorneys for plaintiffs in error, and, from this, the defendant in error was entitled to assume and did assume that no such question was presented for decision, to this Honorable Court, and that the defendant in error was thereby deprived of an opportunity to submit an argument or brief on said question, and that there are numerous decisions of this Honorable Court and of the Courts of other States, on the law of estoppel, which the defendant in error would like to submit to this Honorable Court in support of his contention in this cause."

"3. That this Honorable Court, in rendering its decision herein, overlooked the fact that the deductions from the salary of the defendant in error were the same under the provisions of Chapter 11566, Laws of 1925, as under the provisions of Chapter 8277, Laws of 1919, and that the defendant in error made no payment and did no act, after the passage of Chapter 11566, Laws of 1925, which was not required of him by, and in strict compliance with the terms of his contract, and, therefore, no question of estoppel could arise."

"4. That the defendant in error was bound by the terms of his contract with the City of Jacksonville, to pay into the employees' pension fund, after the 1925 Act became effective, the amounts which he actually paid, and should

not be held to be estopped from asserting his rights because he did the things which the law and his contract required him to do. Equitable estoppel being based on actual or constructive fraud, no estoppel can arise from the faithful performance of a duty."

"5. That this Honorable Court overlooked the fact that under the petitioner's contract he covenanted to pay two per centum (2%), of his monthly salary into the Pension Fund as long as he remained in the City's employ and that his mere continued performance of that obligation, in the absence of other circumstances not shown to exist in this case, wholly fails to reveal any justifiable or legal reason or ground to conclude that petitioner thereby became estopped to contend that he did not accept the terms of the Act of 1925."

"6. That this Honorable Court overlooked the fact that its conclusion that an estoppel arose against the petitioner to claim a refund of more than fifty per cent. (50%), of the amount contributed by him subsequent to the Act of 1925, completely nullifies the force and effect of its. holding that the contract created by the parties under the original Act of 1919 was a voluntary one which could not be subsequently impaired by legislative enactments."

It seems to me that there is considerable merit in these grounds of the petition and that a rehearing should be granted.