**AMWEST INVESTMENTS,
LTD., Plaintiff,**

v.

**The CITY OF AURORA, COLORADO,
and the City Council of the City of
Aurora, Colorado, Defendants.**

**Civ. A. No. 87-C-1819.**

United States District Court,
D. Colorado.

Dec. 12, 1988.

---

Britton White, & Charles M. Johnson, Holland & Hart, Denver, Colo., for plaintiff.

Richard J. Bernick, Bernick & Moch, Denver, Colo., & Charles H. Richardson, & Marcia G. O'Brien, & Robert Rogers, Auro-ra City Attys. Office, Aurora, Colo., for defendants.

## ORDER

CARRIGAN, District Judge.

This action arises out of an election held in Aurora, Colorado, on November 3, 1987. As a result of that election, a certain parcel of land located in Aurora was downzoned from a PCZD classification (*i.e.*, multi-family with a permitted density of up to 24.289 dwelling units per acre) to an R–1A zone district classification (*i.e.*, low to medium density single family with a density of up to 10 dwelling units per acre).

Plaintiff Amwest Investments, Ltd. ("Amwest") alleges that the downzoning deprived it of various constitutional rights, and constituted a breach of contract. Jurisdiction is alleged to exist under 28 U.S.C. §§ 1331 and 1343.

According to the complaint, Amwest, a limited partnership, is the successor in interest to the rights of Seven Hills Development, a joint venture. Amwest is the developer of a property known as Seven Hills, located in Aurora, Colorado. It also owns substantial property in Seven Hills. Aurora is a municipal corporation and a home rule city organized and existing pursuant to the Colorado Constitution.

The complaint alleges that in January 1973, Aurora entered into a formal annexation agreement with Robert Hayutin, then the owner of Seven Hills. This agreement imposed a number of contractual commitments on both Aurora and Hayutin. Plaintiff specifically contends that the agreement committed Aurora to zone Seven Hills as a Planned Community Zone District ("PCZD"). Plaintiff additionally asserts that the agreement is enforceable by successors in interest such as itself.

On October 22, 1984, the then owner of Seven Hills contracted to sell to Intermark Interests, Inc. ("Intermark") a certain parcel of land ("Intermark Parcel"). Intermark proposed to build apartments on that land. Plaintiff contends that under the annexation agreement, the Intermark Parcel was already zoned for apartments with

density at least as great as that proposed by Intermark.

Pursuant to its contract with Intermark, the then owner of Seven Hills applied to Aurora for approval of a final subdivision plat and planned unit development ("PUD") for the apartment project proposed on the Intermark Parcel. The defendant Council rejected the proposed plat and PUD in April 1985.

In an effort to block a second attempt by the then owner of Seven Hills to obtain a plat and PUD, the Seven Hills Neighborhood Association, on February 10, 1986, filed initiative petitions aimed at downzoning the Intermark Parcel to a lower density. The petitions were certified by Aurora, but the owner subsequently entered into a settlement agreement with the neighborhood association and the petitions were withdrawn.

However, two neighbors then sued Aurora and the Council in state district court. As a result of that lawsuit, the two plaintiff neighbors obtained a ruling that intitiative petitions could not be withdrawn once they had been filed and certified. The initiative process commenced again, and an election was held in Aurora on November 3, 1987. As a result of that election, the Intermark Parcel was downzoned from PCZD (multi-family with a permitted density of up to 24.89 dwelling units per acre) to R–1A zone district (low to medium density single family with a density of up to 10 dwelling units per acre). In April 1985, Intermark terminated its contract for purchase of the Intermark Parcel.

Plaintiff claims that the downzoning deprived it of various constitutional rights that it held in connection with not only the Intermark Parcel, but also the entire Seven Hills Development. It also asserts that the downzoning constituted a breach of contractual commitments previously made to Amwest by the defendants.

The complaint contains eight claims for relief. The first alleges that the plaintiff is entitled to a declaratory judgment, pursuant to 28 U.S.C. §§ 2201 *et seq.*, to the effect that the downzoning is in derogation of its constitutional rights, and amounts to a breach of the annexation agreement by the City of Aurora. The second claim alleges that the density rights extended to the plaintiff and its predecessors in interest by the annexation agreement constitute protected property rights under the Fifth and Fourteenth Amendments to the United States Constitution, and under Colorado Constitution Article II, §§ 3, 15 and 25.

The third claim for relief alleges that the downzoning constitutes a law impairing the obligation of contracts, in violation of Article I, § 10 of the United States Constitution, and Article II, § 11 of the Colorado Constitution. The fourth claim alleges that the downzoning "serves to create new obligations, to impose new duties and new disabilities," and therefore creates a law that is retroactive in its operation, in violation of Article II, § 11 of the Colorado Constitution.

The fifth claim alleges a violation of 42 U.S.C. § 1983. Here Amwest asserts that the downzoning has deprived it of the use of a substantial portion of its property without just compensation or due process of law in violation of the Fifth and Fourteenth Amendments, and has impaired contract obligations in derogation of Article I, § 10 of the United States Constitution.

The remaining claims allege state law claims for breach of contract and detrimental reliance.

On January 4, 1988, the defendants moved for the appointment of independent counsel to represent the interests of the electorate of the City of Aurora ("Aurora electorate"). By order dated March 8, 1988, I granted the defendants' motion, and appointed independent counsel to represent "the legal interests of the Aurora electorate regarding Aurora's Ballot Issue No. 1, November 3, 1987." [1]

Currently pending is the Aurora electorate's motion to dismiss for lack of jurisdiction. The Aurora electorate specifically argues that the complaint and action must be dismissed as premature because the plain-

---

**1.** Plaintiff then filed a Motion to Reconsider, Alter, or Amend Order, or to Certify Question for Appeal. By order dated June 9, 1988, that motion was denied.

tiff has neither pursued its administrative remedies within the City of Aurora, nor sought available state court remedies. Amwest has submitted a brief in opposition to the motion to dismiss. Defendants City of Aurora and the City Council of Aurora have submitted a response in support of the Aurora electorate's motion to dismiss. The issues have been briefed and oral argument would not materially assist my decision.

In reviewing the sufficiency of a complaint when tested by a motion to dismiss, I must accept as true the complaint's allegations and view them in a light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). The complaint must stand unless it appears beyond doubt that the plaintiff has alleged no set of facts that would entitle it to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957).

In support of its contention that the plaintiff has failed to pursue its administrative remedies, the Aurora electorate primarily relies on two recent United States Supreme Court cases, *Williamson County Regional Planning Commission v. Hamilton Bank*, 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985), and *MacDonald, Sommer & Frates v. Yolo County*, 477 U.S. 340, 106 S.Ct. 2561, 2566, 91 L.Ed.2d 285 (1986).

In *Hamilton Bank*, the respondent bank's predecessor in interest, a land developer, in 1973 had obtained the petitioner planning commission's approval of a preliminary plat for development of a tract. The tract was to be developed in accordance with the requirements of a county zoning ordinance for "cluster" development of residential areas and the planning commission's implementing regulations. In 1977, the county ordinance was changed so as to reduce the allowable density of dwelling units, but the planning commission continued to apply the ordinance and regulations in effect in 1973 to the developer's tract. In 1979, however, the commission decided that further development of the tract should be governed by the 1977 ordinance and regulations. The commission then disapproved plats proposing further development of the remainder of the tract on various grounds, including failure to comply with current density requirements.

Respondent bank filed suit against the planning commission and its members and staff in federal district court pursuant to 42 U.S.C. § 1983, alleging that the commission had taken the respondent's property without just compensation by refusing to approve the proposed development. The jury found that the respondent bank had been denied the "economically viable" use of its property in violation of the Fifth Amendment's just compensation clause, and awarded damages for the temporary taking of the bank's property. The district court entered an injunction requiring the commission to apply the 1973 ordinance and regulations to the project, but granted judgment notwithstanding the jury's verdict for the commission on the taking claim, concluding that the temporary deprivation of economic benefit from the bank's property, as a matter of law, could not constitute a taking.

The Sixth Circuit reversed, holding that application of government regulations affecting an owner's use of property may constitute a taking, and that evidence supported the jury's finding that the property had no economically feasible use during the period between the commission's refusal to approve the plat and the jury's verdict.

The Supreme Court granted certiorari and reversed. It held that even assuming, *arguendo*, that government regulation may effect a taking for which the Fifth Amendment requires just compensation, and assuming further that the Fifth Amendment requires payment of money damages to compensate for such a taking, the jury verdict could not be upheld because the respondent bank's claim was premature. The Court reasoned that "[b]ecause respondent has not yet obtained a final decision regarding the application of the zoning ordinance and subdivision regulations to the property, nor utilized the procedures Tennessee provides for obtaining just compensation, respondent's claim is not ripe." 473 U.S. at 186, 105 S.Ct. at 3116.

The Court explained:

"[R]esort [by respondent] to the procedure for obtaining variances would result in a conclusive determination by the Commission whether it would allow respondent to develop the subdivision in the manner respondent proposed. The Commission's refusal to approve the preliminary plat does not determine that issue; it prevents respondent from developing its subdivision without obtaining the necessary variances, but leaves open the possibility that respondent may develop the subdivision according to its plat after obtaining the variances. In short the Commission's denial of approval does not conclusively determine whether respondent will be denied all reasonable beneficial use of its property, and therefore is not a final, reviewable decision." *Id.* at 194, 105 S.Ct. at 3120.

A court's reluctance to examine taking claims until such a final decision has been made "is compelled by the very nature of the inquiry required by the Just Compensation Clause." *Id.* at 190, 105 S.Ct. at 3118. Although the question of what constitutes a "taking" for purposes of the Fifth and Fourteenth Amendments has proved to be a problem of considerable difficulty, the Supreme Court consistently has indicated that among the factors of particular significance in the inquiry are the economic impact of the challenged action and the extent to which it interferes with reasonable investment-backed expectations. *Id.* at 190–91, 105 S.Ct. at 3118–19. "Those factors simply cannot be evaluated until the administrative agency has arrived at a final, definitive position regarding how it will apply the regulations at issue to the particular land in question." *Id.* at 191, 105 S.Ct. at 3119.

With regard to its conclusion that the taking claim was not ripe because the bank had not sought compensation through the procedures that the state had provided, the Court in *Hamilton Bank* reasoned that the Fifth and Fourteenth Amendments do not proscribe the taking of property, but rather only proscribe taking it without just compensation. The Court added that "if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation." *Id.* at 195, 105 S.Ct. at 3121.[2]

In *MacDonald, supra,* the plaintiff had submitted a proposal to the county planning commission to subdivide certain property into 159 single-family and multifamily residential lots. The commission rejected the proposal, and the county board of supervisors affirmed. Plaintiff then filed an action in state court alleging that the defendant county and city had restricted the property in question to agricultural use by denying all subdivision applications and thereby had appropriated the "entire economic use" of the property for the sole purpose of providing a public, open-space buffer. Plaintiff sought declaratory and monetary relief.

The state district court dismissed the complaint, holding that the plaintiff's factual allegations were insufficient and that monetary damages for inverse condemnation were foreclosed by state law. The state intermediate court of appeals affirmed, and the state supreme court denied the plaintiff's petition for hearing. On appeal, the United States Supreme Court held that absent a final and authoritative determination by the county planning commission as to how it would apply the regulations at issue to the property in question, the Court could not determine whether a "taking" had occurred or whether the county had failed to provide "just compensation." The Court reasoned that a regulatory taking claim has two components: First, the plaintiff must establish that the regulation has in substance "taken" his property—that is, that the regulation goes too far. *Id.* 106 S.Ct. at 2566. Second, the

---

**2.** The respondent in *Hamilton Bank* asserted that it should not be required to seek variances from the regulations because its suit was predicated upon 42 U.S.C. § 1983, and there is no requirement that a plaintiff exhaust administrative remedies before bringing a § 1983 action.

The Supreme Court responded by stating that "[t]he question whether administrative remedies must be exhausted is conceptually distinct ... from the question whether an administrative action must be final before it is judicially reviewable." 473 U.S. at 192, 105 S.Ct. at 3119.

plaintiff must demonstrate that any proffered compensation is not "just." *Id.* The Court explained:

"It follows from the nature of a regulatory taking claim that an essential prerequisite to its assertion is a final and authoritative determination of the type and intensity of development legally permitted on the subject property. A court cannot determine whether a regulation has gone 'too far' unless it knows how far the regulation goes."

*See also Agins v. Tiburon,* 447 U.S. 255, 260, 100 S.Ct. 2138, 2141, 65 L.Ed.2d 106 (1980) (challenge to application of zoning ordinance not ripe because property owners had not yet submitted a plan for development of their property); *Penn Central Trans. Co. v. New York City,* 438 U.S. 104, 136–37, 98 S.Ct. 2646, 2665–66, 57 L.Ed.2d 631 (1978) (Court declined to find that application of landmark law effected taking because property owners had not sought approval for any other plan, and it was therefore not clear whether landmark preservation commission would deny approval for all uses that would enable plaintiffs to derive economic benefit from the property).

Thus from *Hamilton Bank* and *MacDonald* can be gleaned the general rule that a suit alleging a zoning ordinance or regulation has effected an unconstitutional taking of property under the Fifth and Fourteenth Amendments is not ripe unless the plaintiff has: (1) obtained a final decision regarding the application of the zoning ordinance or regulation to its property after submitting a development plan to the applicable local governing body; (2) sought a variance from the applicable local governing body that would permit uses not allowed under the ordinance or regulation; and (3) utilized state court procedures for obtaining just compensation.

In the present action, Amwest does not allege in its complaint that it applied for development under the zoning ordinance adopted as a result of the initiative. Nor does Amwest allege that it has applied for a variance or density transfer under the ordinance. Additionally, Amwest does not allege that it has sought and been denied compensation in state court. Notably, Colorado courts have recognized the doctrine

of inverse condemnation. *See, e.g., Board of County Comm'rs v. Flickinger,* 687 P.2d 975 (Colo.1984); *Hermanson v. Board of County Comm'rs.,* 42 Colo.App. 154, 595 P.2d 694, 696 (1979) ("regulations designed to depress value with a view to future acquisition may form the basis of a cause of action for compensation on the theory of inverse condemnation against the public entity initiating the regulation").

Thus under *Hamilton Bank* and *MacDonald,* Amwest's claim for a taking in violation of the Fifth and Fourteenth Amendments to the United States Constitution, and contrary to similar safeguards in the Colorado Constitution, is not ripe and therefore must be dismissed without prejudice for lack of subject matter jurisdiction.

Amwest insists that *Hamilton Bank* and *MacDonald* are inapposite to this case. In support of this argument it relies on *Acorn v. City of Tulsa,* 835 F.2d 735 (10th Cir. 1987). There the plaintiffs challenged municipal ordinances as violating the First Amendment. The district court held that the ordinances were facially constitutional and the plaintiffs appealed. On appeal, the defendant city, relying on *Hamilton Bank,* contended that the plaintiff's action was not ripe. In finding *Hamilton Bank* inapplicable, the Tenth Circuit reasoned:

"The distinction lies in the nature of a first amendment claim compared with the nature of a fifth amendment just compensation claim. In order to decide if a taking has occurred within the meaning of the fifth amendment, a court must consider 'the economic impact of the challenged action and the extent to which it interferes with reasonable investment backed expectations. Those factors simply cannot be evaluated until the administrative agency has arrived at a final, definitive position regarding how it will apply the regulations at issue to the particular land in question.'" 835 F.2d at 739–40 (citation omitted).

Despite the plaintiff's assertion to the contrary, I conclude that the situation presented here is distinguishable from *Acorn.* Indeed the instant plaintiff's

claims bear much greater similarity to the taking claims in *Hamilton Bank* and *Mac-Donald* than to the First Amendment challenge in *Acorn*. As the Tenth Circuit observed in *Acorn*, "a first amendment challenge to the facial validity of a statute is a strictly legal question; it does not involve the application of a statute in a specific factual setting." 835 F.2d at 840. The court added that "unlike an alleged unconstitutional taking, an ordinance that proscribes first amendment activity inhibits those who would speak but for the threat of criminal sanctions." *Id.* In contrast, Amwest's taking claim does not involve a strictly legal question. Rather, it encompasses application of legal principles to the particular facts of this case. Moreover, this case does not involve the threat of criminal sanctions.

Plaintiff next asserts that it should be excused from the requirement of seeking approval of its zoning request because such an effort on its part would be futile. In *Kinzli v. City of Santa Cruz*, 818 F.2d 1449, 1455 (9th Cir.1987), *modified*, 830 F.2d 968 (9th Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 775, 98 L.Ed.2d 861 (1988), which involved facts very similar to the present case, the Ninth Circuit rejected the contention that futility may be determined, absent any rejected development plan, by inquiring whether any beneficial use remains or whether the regulatory scheme inhibits the property's marketability. 818 F.2d at 1454. The court reasoned that "[a]doption of such standard would require courts to speculate as to what potential uses may be lurking in the hopes of the property owner and in the minds of developers and city planners." *Id.* The court added that "[t]his would result in the same sort of speculation that the ripeness doctrine prohibits." *Id.*

■ While a precise test for whether the futility exception applies has not been clearly articulated, the Supreme Court has indicated that at least one application must be submitted before the exception can apply. *See MacDonald, supra,* 106 S.Ct. at 2568 n. 8; *Kinzli, supra,* at 1455 ("[u]nder *MacDonald* and *Hamilton Bank*, at least one 'meaningful application' must be made"). Here, the plaintiff has not alleged

that any application for its requested zoning has been made. Accordingly, I conclude that the futility exception does not apply.

As mentioned *supra,* the complaint's third claim for relief alleges that the City violated Article I, § 10 of the United States Constitution (and Article II, § 11 of the Colorado Constitution) by passing a law impairing the obligation of a contract. Additionally, although both the first and fifth claims for relief are based partially on the plaintiff's taking claim, they also are grounded on the plaintiff's claim for impairment of contractual obligation.

■ No party in this case has provided any case law or other authority suggesting that the Supreme Court's application of the ripeness requirement in *Hamilton Bank* and *MacDonald* to taking claims applies equally to claims for impairment of contractual obligations. Notably, however, contracts of municipalities are within the ambit of Article I, § 10 of the United States Constitution. *Singer v. City of Topeka,* 227 Kan. 356, 607 P.2d 467 (1980); *Determan v. City of Irving,* 609 S.W.2d 565 (Tex.Civ.App.1980); *State ex rel. Helena Housing Authority v. City Council of City of Helena,* 125 Mont. 592, 242 P.2d 250 (1952); *Anders v. Nicholson,* 111 Fla. 849, 150 So. 639 (1933).

■ As discussed above, the Supreme Court in *Hamilton Bank* and *MacDonald* reasoned that a claim for an unconstitutional taking by a zoning ordinance or regulation would not be ripe unless the plaintiff had obtained a final definitive position from the local zoning authority regarding how it will apply the ordinance or regulation at issue to the particular land in question. This reasoning applies equally to claims for the unconstitutional impairment of a contractual obligation because in order to determine the extent of the purported impairment, if any exists, a court must consider the economic impact of the challenged action and the extent to which it interferes with the plaintiff's reasonable investment-backed expectations. Those factors simply cannot be evaluated until the local zoning authority has arrived at a final, definitive

position regarding how it will apply the ordinance at issue to the particular land in question.

Thus the plaintiff's claims for relief under the United States Constitution are premature and therefore must be dismissed without prejudice for lack of subject matter jurisdiction. Plaintiff's pendent state law claims also will be dismissed without prejudice.

Accordingly, IT IS ORDERED that:

(1) The Aurora electorate's motion to dismiss is granted; and

(2) The complaint and this action are dismissed without prejudice.