The Honorable Denny Altes State Senator 8600 Moody Road Fort Smith, AR 72903-6718
Dear Senator Altes:
I am writing in response to your request for an opinion concerning the rules that have been promulgated by the Arkansas Teacher Retirement System ("ATRS") with respect to the Teacher Deferred Retirement Option Plan, or "T-DROP," also referred to herein as "the Plan" (A.C.A. §§ 24-7-1301-1315 (Repl. 2000 
Supp. 2005)). As background for your specific question, you state:
 When the Teacher Deferred Retirement Option Plan (T-DROP) was created in 1995, ATRS rules stated that no more than ten (10) years of interest could be credited to any participant's T-DROP account. In 1997, ATRS changed its rules to require that monthly deposits as well as accrued interest shall cease upon completion of ten (10) years of participation in T-DROP.
Your question is as follows:
 Can ATRS apply the 1997 ATRS rule change that requires monthly deposits must cease upon completion of ten (10) years of participation in T-DROP retroactively to participants who entered the T-DROP in 1995 or 1996?
RESPONSE
Although the answer to this question is not entirely clear from a reading of the statutes governing T-DROP, I conclude that the answer is likely "yes," based upon the information before me which indicates that the ATRS Board made this adjustment for cost neutrality purposes and with an eye toward the distribution limits of Section 415 of the Internal Revenue Code (42 U.S.C. § 415(b)).
Before further detailing the basis for this conclusion, it is necessary to clarify the date of the rule change at issue. According to my information, the ATRS Board amended its policies some time in 2003, not 1997, to require that monthly deposits must cease after ten years of participation in T-DROP. The rule change was reviewed by the Subcommittee on Administrative Rules and Regulations on July 3, 2003. See Letter from David Malone, Executive Director of ATRS to Donna K. Davis, Arkansas Legislative Council (July 7, 2003) (referring to final rule changes concerning, inter alia, T-DROP). Specifically, Policy 10-3-1 was amended to include Rule 9, which provides as follows:
 The member's T-DROP account shall be the account into which his T-DROP contribution shall be deposited. At the end of each fiscal year, the member's T-DROP account shall be credited with T-DROP plan interest on the mean balance in the account for the fiscal year. Upon completion of ten (10) years of participation, the monthly deposits and accrued interest shall cease. No more than ten (10) years of interest shall be credited to any participant's T-DROP account. Upon application for retirement, the T-DROP benefits will be based on the account balance at the end of the tenth year.
T-DROP Policies (July 18, 2005) at 10-3-3 (as amended in 2003; emphasis added).
Accordingly, the issue is whether the ATRS Board can apply the 2003 rule change that requires monthly deposits to cease upon completion of ten (10) years of participation in T-DROP retroactively to participants who entered the T-DROP prior to 2003. As stated above, the answer is likely "yes," in my opinion.
T-DROP is a retirement option available to a member of the ATRS who has at least twenty-eight years of credited service in the system. T-DROP Policies, Rule 1 (July 18, 2005) at 10-3-1. Seealso A.C.A. § 24-7-1314 (Supp. 2005). The member can elect this option in lieu of terminating employment and accepting a service retirement benefit. Id. at -1301(a) (Repl. 2000). Under the terms of the Plan, the member will continue to work and receive a salary, but a prescribed percentage of the monthly retirement benefit to which the member would have been entitled if he or she had actually retired (the "Plan deposits") will be paid into a special account. Id. at -1305 to -1307 (Supp. 2005). When the member separates from service and is granted a monthly retirement benefit by the Teacher Retirement System ("System"), he or she receives the balance in the T-DROP account, either as a lump sum or as a monthly benefit. Id. at -1308 (Repl. 2000).
In considering the rule limiting T-DROP deposits to ten (10) years, it must first be observed that unlike other deferred retirement option plans under the Arkansas statutes, the T-DROP legislation contains no provision setting a deadline or so-called "end date" upon which participants must terminate employment and begin receiving their retirement benefits. A typical such provision is found in the statute governing the DROP program for police officers — A.C.A. § 24-11-434. Subsection 24-11-434(b) states that "[t]he duration of participation in the plan for active police officers shall not exceed five (5) years."[1]
A.C.A. § 24-11-434(b)(1) (Supp. 2005). See also A.C.A. §24-11-830(c)(1)(A) (Supp. 2005) (setting a five-year end date under the firefighter DROP program) and A.C.A. § 24-4-802(c)(1) (Supp. 2005) (seven (7) years under the Arkansas Public Employees' Retirement System DROP). Participants under these programs must separate from service at the end of the specified DROP period, or earlier, in order to receive at that time the DROP benefits which have accrued throughout the period of participation. See, e.g., A.C.A. § 24-11-434(c)(1); Op. Att'y Gen. 97-303.
A threshold, and potentially determinative, question arises whether the absence of a similar end date under the T-DROP legislation means that the "Plan deposits" (A.C.A. § 24-7-1306) must accumulate throughout the T-DROP participant's period of employment.[2] According to A.C.A. § 24-7-1308, a member's "participation" in the plan ceases when the member leaves employment and retires. This subsection provides in relevant part:
 (a) The member's participation in the Teacher Deferred Retirement Option Plan shall cease at the time the member separates from service and is granted a monthly retirement benefit by the Board of Trustees of the Arkansas Teacher Retirement System.
 (b)(1) When the member's participation in the plan ceases, the member may elect to receive the balance in the plan account as a lump sum or as a monthly benefit paid in the form elected by the member for payment of the plan.
 (2) The board shall determine factors to be used for the conversion of plan balances to monthly amounts.
A.C.A. § 24-7-1308 (Repl. 2000).
Because "participation" does not cease until the member terminates employment and retires, it might be contended that the legislature intends for the member's T-DROP account to be credited with the monthly plan benefit up and until that time. At first blush, this reading may seem to have merit. I cannot state with certainty, however, that a court would agree T-DROP is clear on this point. There is no express provision for the accumulation of Plan deposits up and until separation from service. Rather, legislative intent to this effect can only be inferred from the provision regarding "participation," and from the legislature's inaction in setting an end date for T-DROP. As noted inSutherland on Statutory Construction, § 49.10 (5th ed., 1993), however, "[l]egislative inaction has been called a `weak reed upon which to lean' and a `poor beacon to follow' in construing a statute." Additionally, under an alternative reading of subsection 24-7-1308, it might be suggested that this provision is only concerned with identifying the point at which the T-DROP benefit is payable, i.e., when "the member separates from service and is granted a monthly retirement benefit. . . ." A.C.A. §24-7-1308(a), supra. To this extent, T-DROP is consistent with other similar deferred retirement plans in requiring that participants leave employment and retire in order to receive plan benefits. See., e.g., A.C.A. § 24-11-434(c)(1) (Supp. 2005) ("[A]t the conclusion of a member's participation in the plan, the member shall terminate employment with all participating municipalities as a police officer and shall start receiving the member's accrued monthly retirement benefit from the policemen's pension and relief fund."). T-DROP on the other hand would be unique among similar plans in imposing no employment termination date while providing for continuous accrual of plan benefits. Other similar plans allow for continued employment after the end of the prescribed DROP period; but the monthly plan deposits cease at the end date. See, e.g., A.C.A. § 24-11-434(c)(2)(C) (Supp. 2005) (part of the police officers' DROP, authorizing continued employment under certain conditions and stating that "[t]he monthly benefit that is credited to the member's plan account is discontinued and the member shall not receive a monthly benefit until the member actually ceases employment[.]").
Uncertainty regarding the meaning of "participation" under T-DROP leads me to anticipate that the absence of a legislatively prescribed end date in all likelihood is not determinative of the question whether T-DROP deposits must accumulate throughout the participant's period of employment. If faced with the question, a court in my opinion instead would likely consider the T-DROP legislation as a whole when interpreting the legislature's silence, as compared to other similar plans, respecting a prescribed deadline for participants to terminate employment and begin receiving their retirement benefits. See generally Flowersv. Norman Oaks Const. Co., 341 Ark. 474, 17 S.W.3d 472 (2000) and Chism v. Phelps, 228 Ark. 936, 311 S.W.2d 297 (1958) (noting the general rule that in determining legislative intent, each section of a statute must be construed with reference to the statute as a whole). Applying this principle of statutory construction, I identify at least two other aspects of T-DROP that potentially bear on the question concerning "Plan deposits." First, T-DROP is to be cost neutral to the Teacher Retirement System as a whole. A.C.A. § 24-7-1306(a)(4) (Supp. 2005). Seealso Op. Att'y Gen. 2005-280 (noting legislative intent for T-DROP to be implemented to realize cost neutrality to the System). Secondly, T-DROP "is intended to operate in accordance with Section 415 and other applicable sections of the Internal Revenue Code." A.C.A. § 24-7-1312(a) (Repl. 2000). Internal Revenue Code Section 415 (26 U.S.C. § 415) sets out limitations on contributions and benefits which apply to individuals covered under a "qualified defined benefit plan" within the meaning of26 U.S.C. § 401(a). T-DROP is such a plan; and as such it is tax-exempt under 26 U.S.C. § 501(a). The question you present does not warrant a detailed discussion of Section 415, other than to note that this section limits the dollar amount of benefits paid from a qualified defined benefit plan. See26 U.S.C. § 415(b) (establishing the basic rule regarding the annual benefit which may be paid to any individual by a defined benefit plan). The effect of Section 415 is to disqualify the Plan's trust if the benefits or contributions exceed the limits provided in the Internal Revenue Code. 26 U.S.C. § 415(a)(1)(B).
It is my understanding that the Board rule limiting T-DROP deposits to ten years was prompted by cost neutrality considerations and concerns regarding Section 415 distribution limits. Although it is beyond the scope of this opinion to express whether a particular limit on T-DROP deposits is necessary to make the Plan cost neutral or whether any particular benefits exceed Section 415 limits, I can opine that the Board rule finds general support in the legislation. It is also relevant to note that the courts will give great deference to the interpretation of a statute by the agency charged with its administration. Arkansas Department of Human Services v. GreenAcres Nursing Homes, Inc., 296 Ark. 475, 757 S.W.2d 563 (1988). It is generally held that if the agency's construction is reasonable, courts must respect it, especially if the interpretation or construction enhances the general purposes and policies underlying the legislation. Murphy Oil Corp. v.Hickel, 439 F.2d 417 (8th Cir. 1971). See also Brimer v.Arkansas Contractors Licensing Bd., 312 Ark. 401, 405,849 S.W.2d 948 (1993) (stating that "[t]he construction of a statute by an administrative agency should not be overturned unless it is clearly wrong. . . .").
The ATRS Board has interpreted the T-DROP legislation to permit its adjustment to the Plan, setting a limit on continuing deposits to members' accounts. This interpretation is not clearly wrong, in my opinion, and will likely be upheld under the principle of deference to the interpretations of administrative agencies. I should also note that in reaching this conclusion, I have considered the general rule that pension acts should be liberally interpreted in favor of those intended to be benefited thereby. Jackson v. Blytheville Civ. Serv. Com., 345 Ark. 56,43 S.W.3d 748 (2001); Looper v. Gordon, 201 Ark. 841,147 S.W.2d 24 (1941). In my opinion, this rule clearly would prevent the Board from requiring separation from service at the end of the ten-year T-DROP deposit period — a requirement that applies under similar DROP plans, as discussed above. However, in my view the liberal interpretation rule would not apply so far as to prevent the adjustment on deposits, given the requirements relating to Section 415 of the Internal Revenue Code and the Board's authority to make adjustments for cost neutrality.
Having found general authority for the rule limiting T-DROP deposits to ten years, I must now address your specific question whether the rule may be applied retroactively to participants who enrolled in T-DROP prior to 2003. Although you have suggested no basis for contesting the rule's retroactive application, one possible theory would be that such application violates the constitutional principle prohibiting the impairment of contracts. This prohibition is set forth in Article 2, Section 17 of the Arkansas Constitution ("[n]o . . . law impairing the obligation of contracts shall ever be passed[,]") and in Article1, Section 10 of the U.S. Constitution ("[n]o state shall . . . pass any law impairing the Obligation of Contracts.") The Arkansas Supreme Court has held that legislation violates this constitutional principle if it operates retroactively so as to divest previously existing contractual rights, and specifically rights arising under a public retirement plan. See, e.g., Jones v. Cheney,253 Ark. 926, 489 S.W.2d 785 (1973) and Pyle v. Webb, 253 Ark. 940,489 S.W.2d 796 (1973). Cheney and Pyle reflect the court's adoption of the theory that a public employee, by accepting the terms and conditions of a law that provides for pensions to participating employees, enters into a contractual relationship with the public entity that passed the law. See Cheney, supra,
citing Anders v. Nicholson, 111 Fla. 849, 150 So. 639 (1933). Under the pertinent terms of that "contract," it is agreed that the employee will be allowed to participate in the retirement plan while employed in his or her public position, and that if the employee meets the vesting requirements of the plan, he or she will be entitled to receive the plan's prescribed benefits.Id. See also Ops. Att'y Gen. Nos. 95-247 and 95-071. A subsequently enacted law that impairs or divests these benefits will, as a general proposition, be challengeable under Ark. Const. art 2, § 17 and U.S. Const. art. 1, § 10.
Regarding T-DROP, I believe it reasonably follows from the above analysis that a change in the prescribed benefits after a member enrolls in the Plan will be constitutionally suspect.[3] As indicated in the above discussion concerning the 2003 rule change at issue, however, the benefits promised under the Plan as enacted (A.C.A. §§ 24-7-1301-1315) in my opinion do not necessarily include unlimited accrual of T-DROP deposits. A reading of T-DROP as a whole instead supports the Board's interpretation that the absence of an end date for deposits is not determinative, and that the maximum amount of benefits that may accrued in a member's T-DROP account can be limited by regulation.
Accordingly, I conclude that no vested rights are impacted by the rule limiting T-DROP deposits to ten years, and that the rule may constitutionally be applied to participants who entered the Plan before 2003.
Assistant Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:EAW/cyh
[1] The five-year limit may be extended up to ten years, subject to certain conditions not relevant to this opinion. A.C.A. § 24-11-434(b)(2) (Supp. 2005). See also A.C.A. §24-11-830(c)(a)(B) (Supp. 2005) (firefighter DROP program).
[2] Subsection 24-7-1306(a)(1)-(3) addresses the particular percentages that apply when determining the amount of "Plan deposits" that go into a participating member's Plan account.
[3] The member's "plan date" is the later of 1) the first day of the second month following the Board's determination that he or she eligible for Plan participation; or 2) the date requested by the member on the T-DROP application. A.C.A. § 24-7-1302
(Repl. 2000).